**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JONATHAN MORGAN, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 4:04cv447 |
| | § | |
| THE PLANO INDEPENDENT SCHOOL | § | |
| DISTRICT, et al., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**
**DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(FACIAL CHALLENGE TO PISD POLICIES) AND GRANTING DEFENDANT PLANO**
**ISD'S CROSS MOTION FOR SUMMARY JUDGMENT**

On this day came on for consideration Plaintiffs' Motion for Partial Summary Judgment

(Facial Challenge to PISD Policies) [Doc. No. 27] and Defendant Plano Independent School

District's ("PISD") Cross Motion for Summary Judgment [Doc. No. 53].  On May 18, 2006, the

court directed the parties to send a letter to the court listing all the documents the court should

consider in deciding the cross motions for summary judgment.  By letter dated May 18, 2006,

Defendants notified the court of all the documents it believed the court should consider in

resolution of the motions.  Plaintiffs sent two letters to the court on May 19, 2006, notifying the

court of the documents it should consider in the resolution of these motions.  Based on these

letters, the court considered the following documents in deciding these motions:

    1)    Plaintiffs' Motion for Partial Summary Judgment (Facial Challenge to PISD
           Policies) [Doc. No. 27].

    2)    Defendant PISD's Response to Plaintiffs' Motion for Partial Summary Judgment
           [Doc. No. 38].

3)      Brief of *Amicus Curiae* Texas Association of School Boards Legal Assistance
        Fund in Support of Defendant PISD's Cross Motion for Summary Judgment [Doc.
        No. 48].

4)      Order Granting Leave to File Brief of *Amicus Curiae* [Doc. No. 50].

5)      Defendant PISD's Cross Motion for Summary Judgment [Doc. No. 53].

6)      Plaintiffs' Reply to PISD's Response to Plaintiffs' Partial Motion for Summary
        Judgment (Facial Challenge to PISD Policies) [Doc. No. 54].

7)      Plaintiffs' Response to Defendant PISD's Cross Motion for Summary Judgment
        (Facial Challenge to PISD Policies) [Doc. No. 59].

8)      Plano ISD's Objections to Plaintiffs' Evidence Attached to Plaintiffs' Response to
        Plano ISD's Cross Motion for Partial Summary Judgment (Facial Challenge to
        Plano ISD Policies) [Doc. No. 66].

9)      Plano ISD's Combined 1) Sur-reply to Plaintiffs' Reply to Plano ISD's Response
        to Plaintiffs' Motion for Partial Summary Judgment (Facial Challenge to PISD
        Policies) and 2) Reply to Plaintiffs' Response to Plano ISD's Cross Motion for
        Partial Summary Judgment [Doc. No. 75].

10)     Plaintiffs' Motion for Leave to Submit Additional Plano ISD Board Policy in
        Opposition to Arguments Raised in Plano ISD's Combined 1) Sur-reply to
        Plaintiffs' Reply to Plano ISD's Response to Plaintiffs' Motion for Partial
        Summary Judgment (Facial Challenge to PISD Policies) and 2) Reply to
        Plaintiffs' Response to Plano ISD's Cross Motion for Partial Summary Judgment
        [Doc. No. 77].

11)     Plaintiffs' Sur-Reply to PISD's Reply- to Plaintiffs' Response to PISD's Cross
        Motion for Summary Judgment (Facial Challenge to PISD Policies) [Doc. No.
        78].

12)     Defendant's Response to Plaintiffs' Motion for Leave to Submit Additional Plano
        ISD Board Policy [Doc. No. 83].

13)     Defendant's Objections to the Affidavit of Doug Morgan Attached to Plaintiffs'
        Sur-Reply to Plano ISD's Reply to Plaintiffs' Response to Plano ISD's Cross
        Motion for Summary Judgment [Doc. No. 84].

14)     *Amicus Curiae* Brief of United States Senator John Cornyn in Support of
        Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 86].

15) Order Granting Plaintiffs' Motion for Leave and Supplementation of the Summary Judgment and Cross Summary Judgment Evidentiary Record with PISD Administrative Regulation 043910 [Doc. No. 87].

16) Plaintiffs' Combined Response to Defendant PISD's Objections to the Affidavit of Doug Morgan and Plaintiffs' Motion to Withdraw and Substitute Affidavit [Doc. No. 89].

17) Defendants' Motion for Leave to File Supplemental Summary Judgment Evidence [Doc. No. 94].

18) Plaintiffs' Response to Defendants' Motion for Leave to File Supplemental Summary Judgment Evidence [Doc. No. 98].

19) Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Leave to File Supplemental Summary Judgment Evidence [Doc. No. 100].

20) Plaintiffs' Sur-Reply to Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Leave to File Supplemental Summary Judgment Evidence [Doc. No. 102].

21) Notice of Submission of Correspondence for Filing as Part of the Record [Doc. No. 106].

22) Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Partial Summary Judgment on the Facial Challenge to the PISD Distribution Policies [Doc. No. 115].

23) Defendants' Response to Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Partial Summary Judgment on the Facial Challenge to the Plano ISD Distribution Policies [Doc. No. 116].

24) Supplement to Doc. No. 78 Plaintiffs' Sur-Reply to Plano ISD's Reply to Plaintiffs' Response to Plano ISD's Cross Motion for Summary Judgment [Doc. No. 117].

25) Motion to Substitute Affidavit of David Morgan Attached to Document No. 78 [Doc. No. 119].

26) Order Granting Plaintiffs' Motion to Substitute Affidavit of Doug Morgan Attached to Document Number 78 [Doc. No. 120].

27)     Defendants' Objection to the Substitute Affidavit of Doug Morgan Attached to
Document Number 78 [Doc. No. 121].

Having considered these documents, the court is of the opinion that Plaintiffs' Motion for

Partial Summary Judgment (Facial Challenge to PISD Policies) should be DENIED, and

Defendant PISD's Cross Motion for Summary Judgment should be GRANTED.

**Preliminary Matters**

Initially, the court will resolve several motions that are relevant to the resolution of the

cross motions for summary judgment.

_Plano ISD's Objections to Plaintiffs' Evidence Attached to Plaintiffs' Response_ [Doc. No. 66].

Defendant PISD objects to the attachment of a Dallas Morning News website article to

the Affidavit of Doug Morgan because it is hearsay and contains numerous hearsay statements.

This objection is sustained.

PISD also objects to the statements in Paragraphs 2-4 of Hiram S. Sasser III's affidavit as

overly vague, non-specific and conclusory.  This objection is overruled.

Finally, PISD objects that Paragraph 4 of Mr. Sasser's affidavit purports to make a

statement of law, for which the affidavit establishes no foundation or competency for him to

make.  This objection is sustained.

1) _Defendants' Objections to the Affidavit of Doug Morgan Attached to Plaintiffs' Sur-Reply to_

_Plaintiffs' Response to Plano ISD's Cross Motion for Summary Judgment_ [Doc. No. 84]; and

2) _Plaintiffs' Combined Response to Defendants' Objections to the Affidavit of Doug Morgan_

_Attached to Plaintiffs' Sur-Reply And Plaintiffs' Motion to Withdraw Affidavit of Doug Morgan_

_and to Substitute Amended Affidavit_ [Doc. No. 89]

-4-

PISD objects to paragraph 8 of the Affidavit of Doug Morgan because the minutes referenced in the affidavit are not attached to the affidavit and the minutes themselves are the best evidence of the contents of the minutes.  PISD objects to paragraph 9 of Mr. Morgan's affidavit because the allegations contained therein are irrelevant to the issues related to the facial constitutionality of the distribution policies at issue.  In response, Plaintiffs' wish to withdraw their original affidavit and submit an amended affidavit to which the minutes are attached.  The Motion to Withdraw the Affidavit of Doug Morgan and to Substitute Amended Affidavit [Doc. No. 89] is granted.  However, the Amended Affidavit of Doug Morgan is insufficient summary judgment evidence in that it fails to direct the court to any particular part of the attached minutes. It also fails to even identify what the minutes contain or do not contain.[1]

Paragraph 9 of the Amended Affidavit of Doug Morgan is substantively the same as paragraph 9 of the original Affidavit of Doug Morgan.  Therefore, PISD's relevancy objection is not moot and should be considered.  Paragraph 9 of Mr. Morgan's amended affidavit does not provide summary judgment evidence that is relevant to the facial constitutionality of PISD's distribution policies.  Paragraph 9 and the attachment it references go to the application of the policies by Principal Swanson.  Accordingly, PISD's objection to Paragraph 9 is sustained.

*Defendants' Motion for Leave to File Supplemental Summary Judgment Evidence* [Doc. No. 94]

PISD seeks leave to supplement its summary judgment evidence with, among other items, a transcript from the PISD public school board meeting held on November 1, 2005.  During this meeting the PISD Board of Trustees heard testimony from eleven educators on subjects relevant

---

[1]Local Rule CV-56(c) provides that the court will not "scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment."

to the time, place, and manner restrictions set out in PISD's April 2005 Distribution Policy.  For the most part, Plaintiffs' response to this motion addresses whether the evidence meets the standards set out in *Tinker v. Des Moines School Dist.*, 393 U.S. 503 (1969); however, whether the *Tinker* standard is the appropriate standard in this case is a disputed issue in the cross motions for summary judgment.  Plaintiffs also argue that the evidence is not relevant.  The court is of the opinion the evidence is relevant to the facial constitutionality of PISD's distribution policies.

Further, in *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 439 (2002), the Supreme Court stated that if a plaintiff succeeds in raising doubt about the theory upon which a regulation is based, the burden then falls on the municipality, or PISD here, to "supplement the record with evidence renewing support for the theory that justifies the ordinance."  And because PISD can justify its policies based on evidence developed prior to the adoption of the policies as well as evidence adduced at trial, it follows that Plano can justify its policies based on evidence developed prior to the adoption of its current policy, which is substantively identical to the April 2005 Policy.  *N.W. Enterprises, Inc. v. City of Houston*, 352 F.3d 162, 175 (5th Cir. 2003). Finally, Plaintiffs will not be heard to complain about the timeliness of the supplemental evidence.  Plaintiffs themselves have continued to file documents for the court's consideration in the resolution of these cross motions for summary judgment on the facial constitutionality of the up until and including July of 2006.  And Plaintiffs have failed to show that they will be prejudiced by PISD's delay in submitting this evidence.  Accordingly, Defendant PISD's Motion for Leave to File Supplemental Summary Judgment Evidence [Doc. No. 84] is granted.

---

_Defendants' Objection to the Substitute Affidavit of Doug Morgan Attached to Document_

_Number 78_ [Doc. No. 121]

The court granted Plaintiffs' Motion to Substitute Affidavit of David Morgan Attached to Document No. 78 on July 24, 2006.  While PISD did not object to the filing of the substitute affidavit to correct a typographical error, it raised objections to the substance of the substitute affidavit.  PISD objects to paragraph 8 of the substitute affidavit because the minutes referenced in the paragraph are not attached to the affidavit and the minutes themselves are the best evidence of their content.  This objection is sustained.

PISD also objects to paragraph 9 of the substitute affidavit because the allegations contained therein are irrelevant to the issues related to the facial constitutionality of the distribution policies.  As the court previously found with respect to an identical paragraph in Mr. Morgan's Amended Affidavit, paragraph 9 of Mr. Morgan's affidavit does not provide summary judgment evidence that is relevant to the facial constitutionality of PISD's distribution policies.  Paragraph 9 and the attachment it references go to the application of the policies by Principal Swanson.  Accordingly, PISD's objection to Paragraph 9 is sustained.

### Background

On December 15, 2004, Plaintiffs filed Plaintiffs' Original Complaint requesting a temporary restraining order, preliminary and permanent injunctive relief, declaratory judgment, nominal damages, and attorney's fees and costs for constitutional violations.  Plaintiffs also filed an Application for Temporary Restraining Order.  On December 16, 2004, the court held a hearing on Plaintiffs' Application for Temporary Restraining Order at which the court granted Plaintiffs' application and issued a Temporary Restraining Order.  The Temporary Restraining

Order prohibited Defendants from "interfering with or prohibiting Plaintiffs and other students from distributing religious viewpoint gifts to classmates at the December 17, 2004 'winter break' parties at Plano Independent School District . . . ."  The Temporary Restraining Order also prohibited Defendants from interfering with or prohibiting Doug and Robin Morgan from distributing religious viewpoint gifts to parents at the winter break parties and prohibited Defendants from deliberately causing students to feel embarrassed, uncomfortable or fearful because of a student's exercise of a legal right.

The distribution policy in effect when this law suit was initiated was a version of the GNAA(LOCAL) (the "2004 Policy").[2]  On April 4, 2005, the PISD Board of Trustees adopted and enacted a new version of FNAA(LOCAL) (the "April 2005 Policy"),[3] which replaced the

---

[2]The relevant portions of the 2004 Policy provide:

The District's classrooms during the school day are provided for the limited purpose of delivering instruction to students in the courses and subjects in which they are enrolled.  Hallways in school buildings are provided for the limited purpose of facilitating the movement of the students between classes and allowing access to assigned lockers.  Classrooms and hallways shall not be used for the distribution of any materials over which the school does not exercise control.

Each school campus shall designate an area where materials that have been approved for distribution by students in accordance with this policy may be made available or distributed. Campus principals may develop reasonable time, place, and manner restrictions regarding the distribution of materials to designated areas.

All written material over which the school does not exercise control and that is intended for distribution shall be submitted to the building principal or designee for prior review according to [specific] procedures.

[3]The relevant portions of the April 2005 and November 2005 Policies provide:

1.  "Classroom" is defined as any location designated for providing and/or facilitating: student instruction; student education; achievement of curricular objectives; achievement of state-mandated learning requirements; school-sponsored extracurricular activities; and/or school-sponsored programming for students.  In addition to traditional classrooms, the term "classroom" includes, but is not limited to, school campus gymnasiums, auditoriums, cafeterias, hallways and outdoor facilities. . .

2.  Elementary, middle, and secondary campuses have different distribution policies and guidelines due to the age/maturity of students and the highly structured learning environment of elementary campuses.  "Elementary" campuses are defined as campuses designated for students up to fifth grade.  "Middle" and "secondary" campuses are defined as campuses designated from sixth grade through twelfth grade.

DISTRIBUTION ON ELEMENTARY CAMPUSES BY STUDENTS

Elementary campuses have restrictions that are narrowly tailored to meet the District's legitimate concerns regarding providing instruction, providing education, maintaining discipline, and/or achieving the curricular objectives and/or state-mandated learning requirements.  The following regulations apply to the distribution of materials between elementary students while on elementary campus, subject to the restrictions identified in LIMITATIONS ON CONTENT herein.

1.  Students may distribute material 30 minutes before school and 30 minutes after school hours at any entrance or exit to the school and at any "gathering area(s)" approved by the principal, the location of distribution in each of these areas to be designated by the principal.

2.  Distribution of materials is not permitted in the classroom during school hours with the exception of during the three annual parties designated by the District.

3.  District elementary school hallways during school hours are provided for the limited purpose of facilitating the safe, organized, and structured movement of students between classes and allowing access to assigned lockers providing and/or facilitating: student instruction; student education; achievement of curricular objectives; achievement of state-mandated learning requirements; school-sponsored extracurricular activities; and/or school-sponsored programming for students.  Due to this limited purpose and the financial costs and safety/security concerns associated with litter and/or trash in the hallways, students may not distribute materials in elementary school hallways during school hours.

4.  District elementary school cafeterias, during designated meal periods, are provided for the limited purpose of providing students meals and/or other nutrition and for delivering instruction to students with regard to nutrition, time management, manners, responsibility, and group discipline.  Due to this limited purpose and the financial costs and safety/security concerns associated with litter and/or trash in the cafeteria, students may not distribute materials in elementary school cafeterias during designated meal periods.

5.  Students may distribute materials during designated recess periods.

6.  Students may leave materials on the "distribution table" and/or any other such designated area so others may obtain a copy.  Each school campus principal shall designate an area where materials may be available or distributed.

7.  Students may distribute materials during the three annual parties designated by the District.

8.  Campus principals may develop other reasonable time, place, and manner restrictions regarding the distribution of materials at areas designated by the principal.

9.  Students may distribute materials in areas not addressed by this policy subject to the reasonable time, place, and manner restrictions developed by the campus principal and the guidelines outlined

2004 Policy.  On November 1, 2005, the PISD Board of Trustees conducted a public meeting at

which it heard additional evidence in the form of the testimony of eleven educators regarding

---

herein. . .

### DISTRIBUTION ON MIDDLE AND SECONDARY CAMPUSES BY STUDENTS

Middle school and secondary school campuses have restrictions that are narrowly tailored to meet the District's legitimate concerns regarding providing instruction, providing education, maintaining discipline, and/or achieving curricular objectives and/or state-mandated learning requirements. The following guidelines apply to distribution of materials between middle and secondary school students while on middle and secondary campuses, subject to the restrictions identified in LIMITATIONS ON CONTENT herein.

1.  Subject to the restrictions herein, students may distribute materials 30 minutes before school hours and 30 minutes after school hours at any entrance or exit to the school and at any "gathering area(s)" approved by the principal, the location of distribution in each of these areas shall be designated by the principal.

2.  Distribution of materials is not permitted in the classrooms during school hours.

3. Middle and secondary students may distribute materials in middle and secondary school hallways during noninstructional times during school hours.

4.  Middle and secondary students may distribute materials in middle and secondary campus cafeterias during designated lunch periods and noninstructional time.

5.  Students may leave materials on the "distribution table" and/or any other designated area so that others may obtain a copy.  Each school campus principal shall designate an area where materials that have been approved for distribution by students in accordance with this policy may be made available or distributed.

6.  Campus principals may develop other reasonable time, place, and manner restrictions regarding the distribution of materials at areas designated by the principal.

7.  Students may distribute materials in areas not addressed by this policy, subject to the reasonable time, place, and manner restrictions developed by the campus principal and the guidelines outlined herein. . . .

"Limitations on Content" include materials that are obscene, vulgar or otherwise inappropriate for the age and maturity of the audience; materials that endorse actions endangering the health or safety of the students; materials that advocate violation of school rules and fall within the legal standard found in the FNAA (LEGAL) policy; materials that advocate imminent lawless or disruptive action and are likely to incite or produce such action; materials that include hate literature that scurrilously attacks ethnic, religious, or racial groups and similar publications aimed at creating hostility and violence if they fall within the standard described in FNAA (LEGAL); and materials about which there is reasonable cause to believe would result in material and substantial interference with any school education and/or curricular related activity that blocks or impedes the safe flow of traffic within hallways and entrance or exit ways of the school.

aspects of education related to the school's distribution policy.  After hearing this testimony, the

PISD Board of Trustees re-adopted the same policy that it had adopted in April of 2005.  The

FNAA(LOCAL) policy adopted on November 1, 2005 (the "November 2005 Policy") is

substantively the same as the April 2005 Policy, with one addition: the November 2005 Policy

includes a Preamble to Policies FNAA(LOCAL) and GKD(LOCAL) (the "Preamble").  The

Preamble memorializes the PISD Board of Trustees' reasons for adopting and enacting the

November 2005 Policy.  The parties filed cross motions for summary judgment on the facial

constitutionality of the 2004 Policy and the April 2005 Policy.  The November 2005 Policy was

adopted after these cross motions were filed.

## Summary Judgment Standard

The granting of summary judgment is proper if "there is no genuine issue as to any material fact

and . . . the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The

trial court must resolve all reasonable doubts in favor of the party opposing the motion.  *Casey*

*Enters. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).

The party seeking summary judgment carries the burden of demonstrating that there is no actual

dispute as to any material fact in the case.  This burden, however, does not require the moving

party to produce evidence showing the absence of a genuine issue of material fact.  *Celotex Corp.*

*v. Catrett*, 106 S. Ct. 2548, 2554 (1986).  The moving party satisfies its burden by "pointing out

to the district court . . . that there is an absence of evidence to support the nonmoving party's

case."  *Id.*

Federal Rule of Civil Procedure 56 does not impose a duty on a district court to "sift

through the record in search of evidence to support a party's opposition to summary judgment."

-11-

*Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996) (citations omitted).  Once the moving

party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a

genuine issue for trial."  FED. R. CIV. P. 56(e).  Such nonmovant must also articulate the precise

manner in which evidence he sets forth supports his claims. *See Forsyth v. Barr,* 19 F.3d 1527,

1537 (5th Cir. 1994) (citation omitted).  Moreover, in designating specific facts, the nonmovant

must "'go beyond the pleadings'" and use "'his own affidavits, . . . deposition[s], answers to

interrogatories, and admissions on file.'" *Jones v. Sheehan & Young Culp, P.C.*, 82 F.3d 1334,

1338 (5th Cir. 1996) (citation omitted).[4]

     If the nonmovant fails to set forth specific facts in support of allegations essential to that

party's claim and on which that party will bear the burden of proof, then summary judgment is

appropriate.  *Celotex*, 106 S. Ct.  at 2552-53.  Even if the nonmovant brings forth evidence in

support of its allegations, summary judgment will be appropriate unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986) (citations omitted).

### Discussion

     The Supreme Court has cautioned that all First Amendment rights accorded to students

must be construed "in light of the special characteristics of the school environment," and that the

federal judiciary should not "intervene in the resolution of conflicts which arise in the daily

---

[4] The court also notes that Local Rule CV-56(b) states that a party's response to a summary judgment motion should "be supported by appropriate citations to proper summary judgment evidence. . . ."  Local Rule CV-56(c) further states that the court will not "scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment."

operation of school systems and which do not directly and sharply implicate basic constitutional values." *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Epperson v. Arkansas*, 393 U.S. 97, 105, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

At issue here is the very narrow question of whether the 2004 and 2005 policies are facially constitutional.  Both parties cite the court to different precedents to support their positions.  The law in this area is not crystal clear, and trial courts as well as appellate courts are frequently called upon to address complex as well as pedantic issues.

I.      **The 2004 Policy**

Plaintiffs argue that the 2004 Policy is unconstitutional under *Tinker v. Des Moines School Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969).  PISD argues that the 2004 Policy is constitutional, that *Tinker* is not the correct standard and that after the adoption of the 2005 Policies, the issue of whether the 2004 Policy is facially constitutional became moot.  The court will first address whether the facial constitutionality of the 2004 Policy is moot.

In *Clark, et al. v. Dallas ISD, et al.*, 806 F. Supp. 116 (N.D. Tex. 1992), the Plaintiffs challenged the facial constitutionality of the Dallas Independent School District ("DISD")  1984-85 Policy.  Plaintiffs did not dispute that DISD had changed its 1984-85 Policy.  The court found that "[b]ecause there is no reason for the court to believe that Defendants will revert to the 1984-85 policy, the court will not consider the facial validity of the 1984-85 policy."  While the court found the *Clark* plaintiffs' claims for declaratory and injunctive relief were moot, it found the damage claims were not moot.  And the court was left to decide what damages, if any, the Plaintiffs were entitled to receive as a result of the application of the 1984-85 policy.

In *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982), the Supreme Court stated that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  The Court found that it was a question of the exercise rather than the existence of jurisdiction.  If evidence exists that shows a defendant will reenact the old statute, then the question is not moot, and the court can resolve the facial challenge.  In *Aladdin's Castle*, the defendant, through its prior conduct, displayed a likelihood that it would return to its prior practice; therefore, the Court found that it had jurisdiction over the appeal and that the trial court should determine whether the likelihood of the defendant reverting back to its old statute was sufficiently remote to make injunctive relief unnecessary.  *Id.* at 289.

In *Bauer v. The Presiding Judge of Probate Court Number 3 of Harris County*, 341 F.3d 352, 358 (5th Cir. 2003), the court stated that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy requiring injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983)).  In order to obtain equitable relief for past wrongs, a plaintiff must demonstrate a continuing harm or a real or immediate threat of defendant repeating the injury in the future.  Somewhat troubling is the Defendants' Answer, which states that schools have an obligation to protect the children and educational environment by having a facially "neutral" policy that "'discourages' non-curricular messages aimed at proselytizing . . . ."  "Factual assertions in pleadings are judicial admissions conclusively binding on the party that made them."  *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).  *See also Morales v. Dep't of the Army*, 947 F.2d 766, 769 (5th Cir. 1991); *Davis v. A.G. Edwards & Son,*

-14-

*Inc.*, 823 F.2d 105, 108 (5th Cir. 1987).  This judicial admission contradicts the District's

assertion that the policy is neutral.

Plaintiffs argue that Defendant will revert back to the old policy and that prospective

relief is necessary to prevent PISD from returning to its old unlawful ways.  Plaintiffs claim that

in its Answer, PISD has suggested it will continue to engage in religious viewpoint

discrimination and that PISD refused to adopt a new policy prior to the filing of this lawsuit.

Plaintiffs also submit that because the Texas Association of School Boards has a version of the

2004 Policy on its website, a mootness finding is inappropriate.

The ultimate question is whether there is a reasonable expectation that the wrong will be

repeated.  *Id.*  PISD must demonstrate that there is no such reasonable expectation.  PISD

adopted a new policy in April of 2005 that grants more First Amendment privileges to students,

relaxes time, place, and manner restrictions, and eliminates its prior restraints.  PISD re-adopted

this same policy after hearing testimony from educators within the district.  Further, PISD

specifically represented to this court that it would not revert back to the 2004 Policy.  Since any

attempt to revert back will most likely end up in this court, the court will take the District at its

word.  While that representation alone may not be enough to render moot Plaintiffs' facial

challenge to the 2004 Policy, that representation combined with the adoption of the April 2005

and November 2005 Policies clearly demonstrates that there is no reasonable expectation that

Defendant will reenact the 2004 Policy.  *United States v. WT Grant Co.*, 345 U.S. 629, 632

(1953).  Further, this case does not concern what the TASB website contains.  The conduct and

representations of PISD and its lawyers establish that there is no reasonable expectation that

PISD will revert back to the 2004 Policy.[5]  As a result, the facial constitutionality of the 2004 Policy is moot.  Judge Brown has already ruled on this issue and the court declines to revisit the issue.  This is not to say that the 2004 Policy as applied to the Plaintiffs was constitutional and that the requirement of review was not arbitrary and whimsical as applied to the Plaintiffs, particularly in light of the Defendant's judicial admission that the policy was enacted to discourage proselytizing.

## II.	The April 2005 Policy and the November 2005 Policy

The April 2005 and November 2005 Policies (collectively "2005 Policies") are substantively the same, with one exception: the November 2005 Policy contains a Preamble.[6]

---

[5]Under Federal Rule of Civil Procedure 11(b)(1), the attorney who signs a pleading, motion or other paper is "**certifying** that to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, — . . . it is not being presented for any improper purpose . . . ."

[6]**Preamble to Policies FNAA(LOCAL) and GKD(LOCAL)**

WHEREAS, the Board of Trustees finds it is the mission of the District to teach and train its students state and federally mandated curriculum and learning requirements, social skills and values, order, discipline, and respect for authority and each other; and

WHEREAS, the Board of Trustees finds that without first establishing discipline and maintaining order at the schools, teachers cannot begin to educate their students; and

WHEREAS, the Board of Trustees finds the District has a limited amount of time available to teach its students the above; and

WHEREAS the Board of Trustees finds that students should have an opportunity to distribute non-school materials in a manner that does not disrupt the educational process, the order and discipline of the schools and/or the operation of the schools; and

WHEREAS, the provisions of Policies FNAA(LOCAL) and GKD(LOCAL) are intended to regulate the time, place and manner of non-school materials during times and places when the District is attempting to operate the schools and teach its students the above which the Board of Trustees finds to be reasonable and content neutral; and

WHEREAS, the Board of Trustees finds the provisions of Policies FNAA(LOCAL) and GKD(LOCAL) are intended to decrease distractions, to decrease disruption, to increase the time available and dedicated to learning, and to improve the educational process, environment, safety and order at District schools and not invade or collide with the rights of others; and

WHEREAS, the Board of Trustees finds the provisions of Policies FNAA(LOCAL) and GKD(LOCAL)

However, the November 2005 Policy is a re-adoption of the April 2005 Policy, which PISD made after hearing the testimony of eleven educators.  For purposes of analyzing the facial constitutionality of the 2005 Policies themselves, they are considered together here.

Plaintiffs argue that the *Tinker* standard— material and substantial interference with schoolwork or discipline— is the correct standard to be applied to the distribution policies in this case.  *Tinker v. Des Moines Independent Community School District, et al.*, 393 U.S. 503, 89 S.Ct. 733, 21 L. Ed. 2d 731 (1969).  In *Tinker*, school officials suspended students from public high school because they wore black armbands to school to protest the Vietnam War.  The Court stated that "First Amendment rights, applied in light of the special circumstances of the school environment, are available to teachers and students.  It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech of expression at the schoolhouse gate."  *Id*. at 506.  *Tinker* was a viewpoint discrimination case.  Students were suspended based

---

relating to elementary schools are also intended to facilitate the safe, organized and structured movements of students between classes and at lunch, as well as to reduce littering; and

WHEREAS, the Board of Trustees finds that, from an educational perspective, the distribution of non-school materials during times and places when the District is attempting to teach students is both distracting and a material and substantial disruption to the educational process and environment and to the order and discipline of the schools; and

WHEREAS, the Board of Trustees finds the provisions of the Policies FNAA(LOCAL) and GKD(LOCAL) leave open alternative forms of communication of non-school materials, such as alternative times and places to distribute such materials, non-disruptive oral speech, and "distribution tables"; and

WHEREAS, the Board of Trustees acknowledges receipt of testimony from educators, professionals and others and various written materials, including, but not limited to, studies, research, evaluations, and other findings that overwhelming [sic] support the adoption of Policies FNAA(LOCAL) and GKD(LOCAL); and

WHEREAS, the Board of Trustees believes that, to better improve the educational process, environment, safety and order at District schools, it is necessary to adopt the reasonable time, place and manner regulations in Policies FNAA(LOCAL) and GKD(LOCAL):

The Board of Trustees hereby approves and adopts the above findings to support the passage of and hereby adopts Policies FNAA(LOCAL) and GKD(LOCAL).

on the political viewpoint of their speech.  The Court found it relevant that the school authorities

did not purport to prohibit the wearing of all political or controversial symbols.  Students in some

of the schools wore buttons relating to national political campaigns, and some wore Iron Crosses.

The order prohibiting armbands did not extend to these, so the Court found that "[c]learly, the

prohibition on expression of one particular opinion, at least without evidence that it is necessary

to avoid material and substantial interference with schoolwork or discipline, is not

constitutionally permissible."  *Id*.

Defendants argue that the correct standard to be applied to the 2005 Policies is the

standard applicable to time, place, and manner restrictions or the *O'Brien* test.  *United States v.

O'Brien*, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968); *see also  Canady v. Bossier

Parish School Board*, 240 F.3d 437, 443 (5th Cir. 2001) (stating that for the purposes of a

constitutional challenge to the policy, the *O'Brien* test and the test applicable to time, place and

manner restrictions are virtually the same).  PISD relies on *Canady* for the proposition that the

Fifth Circuit has rejected the blanket application of the *Tinker* analysis in any and all student

speech cases.  In *Canady* the plaintiffs sued the school board for an injunction against the

enforcement of a mandatory school uniform policy.  The Fifth Circuit found that the level of

scrutiny applied to regulations of student expression depends on the substance of the message,

the purpose of the regulation and the manner in which the message is conveyed.  The Fifth

Circuit specifically found *Tinker* was applicable to school regulations directed at student

viewpoints, and *Tinker* does not account for regulations that are completely viewpoint-neutral.

*Canady*, 240 F.3d at 443.  The present case presents just such a situation where the regulations

are viewpoint-neutral.  The 2005 Policies are regulations on the time, place and manner of

student distribution of non-school materials.  Nothing on the *face* of the policies discriminates

against a particular viewpoint, and the summary judgment evidence does not establish that

PISD's intent in adopting these policies was to discriminate against a particular viewpoint.  As a

result, *Tinker* is not the standard to be applied in this case for determining the facial

constitutionality of the 2005 Policies.

        In fact, the 2005 Policies greatly expand the First Amendment rights of students in the

Plano school district.  Materials are no longer subject to a prior submission rule in either

elementary or middle and secondary schools.  Students are simply subject to time, place and

manner restrictions.  The ultimate question is whether those restrictions are reasonable.

"When, where, and how children can distribute literature in a school is for educators, not judges,

to decide provided such choices are not arbitrary or whimsical."  *Muller by Muller v. Jefferson*

*Lighthouse Sch.*, 98 F.3d 1530, 1543 (7th Cir. 1996).  Expression by high school students may be

limited by reasonable and equally-applied time, place and manner restrictions.  *Shanley v.*

*Northeast Indep. Sch. Dist.*, 462 F.2d 960 (5th Cir. 1972).  In fact, the state may even enforce

regulations of time, place and manner of expression in traditional public forums, such as a park

or a public street, provided those regulations are content-neutral, are narrowly tailored to serve a

significant governmental interest, and leave open ample alternative channels of communication.

*Chiu, et al. v. Plano ISD, et al.*, 260 F.3d 330 (5th Cir. 2001) (*Chiu I*).  Government regulation of

speech is content neutral if it is "justified without reference to the content of the regulated

speech."  *Ward, et al. v. Rock Against Racism*, 491 U.S. 781, S. Ct. 2746, 105 L. Ed. 2d 661

(1989).  And while the regulation must be narrowly tailored  to serve a significant governmental

interest, it is not required to be the least intrusive means of achieving the desired end.  This "less-

restrictive-alternative analysis . . . has never been part of the inquiry into the validity of a time, place, and manner regulation." *Id*. Time, place, and manner restrictions are not invalid "simply because there is some imaginable alternative that might be less burdensome on speech." *Id.* The "narrowly tailored" requirement is satisfied if the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation; however, the government cannot regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals. While content-neutral time, place and manner restrictions must be narrowly tailored, strict scrutiny is not applicable to time, place and manner restrictions. *Id.* Finally, the regulation must leave open alternative channels of communication.

With regard to the time, place and manner regulations the 2005 Policies set out for elementary schools, the regulations are content-neutral. The stated purposes of the regulations in the 2005 Policies are providing instruction, providing education, maintaining discipline, and/or achieving curricular objectives and/or state mandated learning requirements. As set out above, the 2005 Policies also restrict distribution of non-school materials in the elementary school hallways. Plano ISD's stated purposes for this regulation are facilitating the safe, organized, and structured movement of students between classes and allowing access to assigned lockers for providing and/or facilitating: student instruction; student education; achievement of curricular objectives; achievement of state-mandated learning requirements; school-sponsored extracurricular activities; and/or school-sponsored programming. The 2005 Policies also prohibit distribution of non-school materials in elementary cafeterias during designated meal times. This regulation promotes the stated purpose of Plano ISD's elementary cafeterias during designated mealtimes of providing students meals and/or other nutrition and for delivering instruction to

students with regard to nutrition, time management, manners, responsibility, and group discipline.  These policies also help to reduce financial costs and ensure safety and security caused by litter and trash.  These regulations are justified without relation to the content of the non-school materials.

These regulations are narrowly tailored to achieve a significant governmental interest. Improving the educational process is an important and substantial interest of a public school system.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 286 (5th Cir. 2001).  The regulations only restrict the time and the place for distribution of non-school materials to the extent necessary to further its interests. The purpose of any public school is the education of its students.  Certainly in an elementary setting, more structure is required to ensure that the limited time allotted for instruction is maximized, while still being careful to protect the First Amendment rights of students.  Here, Plano ISD has narrowly tailored its time and place regulations to further its interest of providing education and instruction to elementary students.

Finally, the 2005 Policies leave open ample alternative channels of communication. Elementary students may distribute non-school literature 30 minutes before school, 30 minutes after school, during designated recess periods, on a designated distribution table and during the three holiday parties.  The alleged prohibition of distributing non-school material at Plano ISD holiday parties has been a focal point of this litigation and was the primary reason for Plaintiffs' application for a temporary restraining order in December of 2004.  This provision eliminates any confusion as to whether elementary students may exchange non-school materials at these parties. These provisions leave ample opportunity for elementary students to distribute non-school materials.  Because  the time and place regulations placed on the distribution of non-school

-21-

materials by Plano ISD elementary students during school hours are content neutral, narrowly tailored to promote a significant governmental interest, and leave open alternative avenues of communication, the 2005 Policies are facially constitutional.

The 2005 Policies also put time and place regulations on middle and secondary school students. Middle and secondary school students (sixth through twelfth grades) may distribute non-school materials 30 minutes before and 30 minutes after school hours at any school entrance or exit and at any "gathering areas" approved by the principal, in the school hallways during non-instructional time during school hours, in school cafeterias during designated lunch periods and non-instructional time, and students may leave materials on a "distribution table." Essentially, middle and secondary school students are prohibited from distributing non-school materials in the classrooms during school hours. Again, the PISD's stated interests are providing instruction, providing education, maintaining discipline, and/or achieving curricular objectives and/or state mandated learning requirements. These interests are significant and are content-neutral. With respect to middle and secondary school students, the time and place regulations are narrowly drawn to serve Plano ISD's interest in providing education and instruction to its students. Middle and secondary school students are only prohibited from distributing non-school materials in the classroom. Math class is for learning math and a regulation that does not permit students to exchange materials that do not relate to math class in the classroom is narrowly tailored to that end. Plano ISD has recognized that middle and secondary school students do not need as structured an environment as do elementary school students, and these regulations reflect that recognition. Further, ample alternative channels of communication exist. These students may distribute non-school materials at entrances before school and after school, in the halls during

non-instructional times, and during lunch and in the cafeteria during non-instructional times.  In fact, Michael Novotny, principal of Jasper High School, testified at the November 1, 2005 public board meeting that the 2005 Policies provided over two hours during which students could distribute non-school materials during the school day over a great deal of the campus. Accordingly, the time, place and manner regulations as to middle and secondary school students are reasonable and facially constitutional.

### III.    Objective Evidence

As previously discussed, the November 2005 Policy and the April 2005 Policy are substantively the same, with one addition, a preamble, which memorializes the board's legislative intent.  The Plano ISD school board held a public meeting on November 1, 2005, at which it received additional objective evidence to support its policy.  After hearing this evidence, the Plano ISD school board re-adopted the April 2005 Policy and added a preamble.

Plaintiffs argue repeatedly that Plano ISD has failed to offer objective evidence to establish that the speech in question can be constitutionally regulated.  Plaintiffs repeatedly state that this is PISD's burden under *Tinker*.  However, *Tinker* is not the applicable standard because the 2005 Policies are content-neutral and only regulate the time, place and manner of the distribution.  The Fifth Circuit in *Shanley* only required that the school board demonstrate reasonableness in its regulations.  *Shanley*, 462 F.2d at 971 (5th Cir. 1972).  The court in *Shanley* went on to state that the school administration need not stay a reasonable exercise of restraint until a disruption actually occurs.  *Id*.  And here PISD does not even impose a restraint on speech; it merely imposes reasonable regulations.

Even though the April and November 2005 Policies are facially reasonable regulations of time, place and manner, PISD has provided summary judgment evidence in the form of the Affidavit of Danny Modisette and the supplemental summary judgment evidence, which includes a transcript of the testimony of professional educators.

In his affidavit, Deputy Superintendent Modisette states that he has been an educator in public schools for thirty-five years and has served in his current position for PISD for the past five years.  Based on his experience, Modisette states that he has personal knowledge of the disruption to one or more students caused by the distribution of non-school materials, such as birthday cards, concert tickets and inanimate objects.  Modisette states that these disruptions ultimately cause a material disruption of the learning environment.  Modisette met with elementary principals throughout PISD to discuss their observations concerning whether the distribution of non-school materials during instructional time caused a material disruption. Based on their experience and observations, the principals expressed to Modisette that such distribution creates a material disruption.  Modisette stated that he advised the PISD Board of Trustees of this information prior to the adoption of the April 2005 Policy.

The transcript of the public PISD school board meeting held on November 1, 2005 contains additional evidence supporting the reasonableness of the time, place and manner regulations.  Eleven educators testified based on their observations and experience.  Elizabeth Kirby, principal of Beverly Elementary, testified that the distribution of non-school items can particularly cause disruptions in the elementary school setting when the distributions, such as an invitation, are not made to every student.  Students spend time discussing who did not receive an invitation and then spend time consoling students who did not receive an invitation.  This process

-24-

takes attention off instructional time and shifts students' focus from the lesson to the distribution.
Ms. Kirby further testified that distribution in the elementary hallways can often result in
tardiness, which distracts from instructional time.  Pam Murray, principal of Mitchell Elementary
testified that in moving hundreds of students, ages five through eleven, through the halls during
the school day requires orderliness procedures.  In the hallways, elementary students are learning
how to follow the directions of teachers, respect for other students in classrooms adjacent to the
hallway and efficient use of time.  Distribution of non-school items during this time is not
favorable in achieving these goals.  Principal Murray also stated that during the lunch period in
elementary cafeterias, teachers and cafeteria staff spend time teaching students to make nutritious
choices, to be polite to cafeteria workers, to be responsible and enter their own PIN numbers and
to walk safely in between tables without bumping into someone.  She further testified that there
are approximately 100 to 120 students in each grade level.  These students have 30 minutes to
enter the cafeteria, wait in line, get their lunches and eat their lunches, and all of this can only be
accomplished by having routines set out each day.  As previously stated Michael Novotny,
principal of Jasper High School, testified that the 2005 Policies allow students to distribute non-
school materials for a total of over two hours during the school day.  Bonnie Manley, principal of
Murphy Middle School, testified that instructional time begins when the students enter the
classroom, if not before and cited a specific example of instruction beginning during the four
minute passing period.

Plaintiffs argue that this evidence is insufficient as supposition and unsubstantiated fears.
However, the Fifth Circuit has often deferred to the school administration regarding school
policies.  *See Canady*, 240 F.3d at 441 (finding that educators have an essential role in regulating

school affairs and in establishing appropriate standards of conduct); *Shanley*, 462 F.2d at 967

(stating "[t]hat courts should not interfere with the day-to-day operations of schools is a

platitudinous but eminently sound maxim which this court has reaffirmed on many occasions.");

*Burnside v. Byars*, 363 F.2d 744, 748 (5th Cir. 1966) (recognizing that the establishment of an

educational program requires rules and regulations necessary for the orderly classroom learning

and that officials have a wide latitude of discretion in implementing such rules and regulations).

The testimony of the educators themselves on the effects of distribution of non-school materials

in the public school is competent summary judgment evidence to support the reasonable

regulations provided in the policies.

## IV.     Vagueness

Plaintiffs also argue that PISD's distribution policies are void for vagueness.  Invalidation

of a law for vagueness is appropriate if the terms of the statute are so indefinite that "men of

common intelligence must necessarily guess at its meeting and differ as to its application."

*Reeves v. McConn*, 621 F.2d 377, 383 (5th Cir. 1980).  PISD's 2005 policies are not vague.  Men

of common intelligence would understand what type of speech is regulated, that is non-school

materials at the specific times and places set out in the policies.  Plaintiffs have failed to raise any

specific argument as to how men of common intelligence would only be able to guess at the

meaning of the 2005 Policies; therefore, the 2005 Policies are not invalid based on vagueness.

## V.     Overbroad

Finally, Plaintiffs argue that PISD's distribution policies are unconstitutionally overbroad.

"If, at the expense of First Amendment freedoms, a statute reaches more broadly than is

reasonably necessary to protect legitimate state interests, a court may forbid its enforcement."

However, the United States Supreme Court has "cautioned that invalidation of state laws for

facial overbreadth is a remedy that should be applied 'sparingly and only as a last resort.'" *Id.*

(quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S. Ct. 2908, 2916, 37 L. Ed. 2d 830

(1973)).  The extent to which the statute is overbroad must be both real and substantial.  *Id.*

Plaintiffs complain that the policy restricts speech that does not cause a material or substantial

disruption; however, this is not the standard applied to regulations on time, place and manner.

Plaintiffs put forth examples such as a senior handing an admission packet to a friend during

English class and a sixth grader handing a note to her friend at her locker.  First, the 2005

Policies do not prohibit a sixth grader from handing a note to her friend at their lockers.  Second,

these examples hardly rise to the level of being substantially overbroad.  English class is for

education in English.  A policy is not substantially overbroad if it restricts the English classroom

to that purpose.  Accordingly, the 2005 Policies are not overbroad.

### Recommendation

Based upon the foregoing, it is the Court's recommendation that Plaintiffs' Motion for

Partial Summary Judgment (Facial Challenge to PISD Policies) [Doc. No. 27] should be

DENIED and Defendant Plano Independent School District's Cross Motion for Summary

Judgment [Doc. No. 53] should be GRANTED.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve

and file written objections to the findings and recommendations of the magistrate judge.  28

U.S.C.A.  § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations

contained in this report within ten days after service shall bar an aggrieved party from *de novo*

review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 30th day of January, 2007.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE