**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JONATHAN MORGAN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 4:04cv447 |
| | § | |
| THE PLANO INDEPENDENT SCHOOL | § | |
| DISTRICT, LYNN SWANSON, individually | § | |
| and as principal of Thomas Elementary | § | |
| School, LISA LONG, individually and as | § | |
| principal of Wells Elementary School, | § | |
| SUZIE SNYDER, individually, JACLYN | § | |
| T. BOMCHILL (a/k/a JACKIE BOMCHILL), | § | |
| individually and as principal of Rasor | § | |
| Elementary School, JOHN BEASLEY, | § | |
| individually, CAROLE GREISDORF, | § | |
| individually and as the Assistant | § | |
| Superintendent of the Plano Independent | § | |
| School District, and DOUG OTTO, | § | |
| individually and as the Superintendent of | § | |
| Plano Independent School District, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE GRANTING IN**
**PART AND DENYING IN PART INDIVIDUAL DEFENDANT'S**
**MOTION TO DISMISS BASED ON QUALIFIED IMMUNITY**

On this day came on for consideration the Individual Defendants' Motion to Dismiss

Based on Qualified Immunity [Doc. No. 30].  Having considered the motion, Plaintiffs'

Response [Doc. No. 41], the Individual Defendants' Reply [Doc. No. 52] and Plaintiffs' Sur-

reply [Doc. No. 56], the Court is of the opinion the motion should be granted in part and denied

in part.

**Background**

On December 15, 2004, Plaintiffs filed Plaintiffs' Original Complaint requesting a temporary restraining order, preliminary and permanent injunctive relief, declaratory judgment, nominal damages, and attorney's fees and costs for constitutional violations.  Plaintiffs filed their Amended Complaint on May 20, 2005 and their Second Amended Complaint on August 18, 2005.  In their Second Amended Complaint, Plaintiffs brought claims against several PISD employees and officials in their individual capacities, including Lynn Swanson (principal of Thomas Elementary), Lisa Long (principal of Wells Elementary), Suzie Snyder (teacher at Thomas Elementary), John Beasley (PISD Security Police Services), Carole Greisdorf (Assistant Superintendent of PISD), and Doug Otto (Superintendent of PISD) (collectively the "Individual Defendants").[1]  The Individual Defendants moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis of qualified immunity.

The relevant facts for the purposes of resolving this motion involve four separate incidents that allegedly occurred on various campuses at PISD.[2]  In their Second Amended Complaint, Plaintiffs allege the following facts:

**1.  2002-2003 W.H.L. Wells Elementary School**

During the two years prior to the 2002-2003 academic year at Wells Elementary, Michael Shell and Kevin Shell were allowed to distribute invitations or tickets for events at their church to fellow students.  Other students were also allowed to distribute secular non-school materials.

---

[1]Jaclyn, or "Jackie" Bomchill was also sued in her individual capacity; however this Individual Defendants' motion does not address the claims against her.

[2]Plaintiffs Second Amended Complaint also includes an incident that occurred in 2001 involving Christina and Michaela Wade; however, the Wade Plaintiffs do not seek damages for the 2001 actions, only equitable relief.

During the 2002-2003 academic school year, Suzie Snyder was Kevin Shell's teacher and Lisa
Long was the principal at Wells Elementary.  In late March to early April of 2003, Kevin Shell
took religious viewpoint invitations and tickets to distribute to his classmates, inviting them to
attend the Prestonwood Baptist Church Easter Sunrise service.  Ms. Snyder informed Kevin that
he could not distribute the tickets while on school property because they were religious.  Kevin
asked Ms. Snyder when he could announce to his classmates that he had tickets to distribute and
to actually distribute the tickets.  After consulting with Principal Long, Ms. Snyder informed
Kevin that the tickets were "inappropriate materials" for discussion and distribution by one
student to another student while on school property.  Snyder further informed Kevin that he could
never discuss or distribute the religious viewpoint tickets to his school classmates during school.

On Monday, April 7, 2003, Michael and Kevin Shell took tickets for the Prestonwood
Easter Sunrise Service to school and offered these free tickets to their classmates at Wells
Elementary.  Michael Shell's teacher, Ms. Krauss, told Michael Shell that he could verbally tell
his classmates about the sunrise service and could offer them a ticket if they would like to take
one.  Kevin Shell made this same request of Ms. Snyder, and after conferring with Principal
Long, Ms. Snyder informed Kevin Shell that he could not, at any time, discuss or distribute the
free tickets to the sunrise service while he was on school property.

On Friday, May 2, 2003, Kevin and Michael Shell took free tickets for another
Prestonwood Baptist Church program to school in order to offer the tickets to their classmates.
Michael Shell was permitted to verbally announce the program, to discuss the program with this
classmates and to offer tickets to those classmates showing an interest.  Ms. Snyder did not allow
Kevin Shell to verbally announce that he had tickets or to offer the tickets for the program to his

classmates.  In response to Ms. Snyder's decision, Sunny Shell, Kevin and Michael Shell's mother, called both Ms. Snyder and Principal Long.  Principal Long returned Sunny Shell's call, and when asked by Sunny Shell why Kevin Shell was not allowed to announce and distribute the tickets, Principal Long responded that perhaps Ms. Snyder misunderstood the PISD policy.

On Monday, May 5, 2003, Carole Greisdorf, PISD Assistant Superintendent, returned a call that Sunny Shell had made to the PISD Board of Trustees president Mary Beth King.  Sunny Shell requested that Ms. Greisdorf provide the correct interpretation and application of the PISD policy with regard to announcing and distributing materials from one student to another.  Ms. Greisdorf stated that Michael Shell's teacher violated PISD policy by allowing Michael Shell to announce in class and distribute tickets and that Principal Long and Ms. Snyder had acted in accordance with PISD policy.  Ms. Greisdorf stated that under PISD policy, the Shells could not announce or offer any religious material or religious information to any other student at any time while on school property.  Ms. Greisdorf further stated that the Shells could not distribute tickets during lunch and recess because lunch was a part of the social studies curriculum and recess was part of the physical education curriculum.  Ms. Greisdorf explained to Sunny Shell that the policies allowing students to form religious led activities, pass out literature and make announcements only applied to secondary schools.  Ms. Greisdorf sent Sunny Shell an email referring her to a PISD policy on time, place and manner of distribution and to the staff handbook, which does not allow students to hand out invitations to private parties.  Michael Shell and Kevin Shell never offered more than ten tickets to any classmates.

**2.  2003 Thomas Elementary School Winter Break Party**

The Thomas Elementary School Winter Break Party was scheduled for December 19, 2003.  Students were allowed to distribute a small gift to their classmates at the party, and Jonathan Morgan wanted to give a candy cane ink pen with a laminated bookmark attached containing a religious message entitled "The Legend of the Candy Cane."[3]  Jonathan Morgan wanted to include this gift in a sealed goodie bag for each of his classmates with the inscription "To: [classmate's name] From: Jonathan Morgan."

In previous years, students were not allowed to give gifts with a religious viewpoint or a religious message.  On November 28, 2003, Doug and Robin Morgan, Jonathan Morgan's parents, contacted PISD seeking clarification of the school's policy as it related to the distribution, by one student to another student while on PISD property, of non-school material containing religious viewpoints, symbols and messages.  PISD personnel directed Doug Morgan to Ms. Greisdorf.  Ms. Greisdorf suggested that Doug Morgan set up a meeting with Principal Swanson to discuss the student-to-student distribution of religious materials.

---

[3]The laminated bookmark read:
> The Legend of the Candy Cane
> A candy maker wanted to invent a candy that was a witness to Christ.
> First of All, he used a hard candy because Christ is the Rock of Ages.
> This hard candy was shaped so that it would resemble a "J" for Jesus, or turned upside down, a shepherd's staff.
> He made it white to represent the purity of Jesus.
> Finally, a red stripe was added to represent the blood Christ shed for the sins of the world, and three thinner red stripes he received on our behalf when the Roman soldiers whipped him.
> Sometimes a green stripe is added as a reminder that Jesus is a gift from God.  The flavor of the cane is peppermint, which is similar to hyssop.  Hyssop is in the mint family and was used in the Old Testament for purification and sacrifice.
> Jesus is the pure Lamb of God, come to be a sacrifice for the sins of the world.
> So, every time you see a candy cane, remember the message of the candy maker:
> Jesus is the Christ!!

On December 4, 2003, Doug and Robin Morgan and Robin Morgan's parents met with Principal Swanson.  Principal Swanson confirmed that in the past, school officials had questioned parents and students regarding whether their goodie bags contained any religious viewpoint or religious reference material and had confiscated any such material.  Principal Swanson further stated that PISD personnel would continue this practice in the future.  Principal Swanson also confirmed that the term "Winter Break" would be used to describe the party instead of "Christmas," and that "Christmas" was a religious viewpoint term that should not be used to describe events at PISD schools.  Principal Swanson stated that she would investigate whether teachers instructed PISD students to write "Happy Holidays" instead of "Merry Christmas" on greeting cards and whether the colors red and green were restricted from the Winter Break parties, but she did confirm that all symbols which represented Christmas or the Christian religion would be banned.  Principal Swanson further told Doug Morgan that the distribution of secular gifts would be permitted including Jonathan Morgan's candy cane ink pen; however, the bookmark bearing "The Legend of The Candy Cane" would not be permitted because of the religious message it contained.

Principal Swanson later informed Doug Morgan that she confirmed with PISD administration that her explanation was correct.  And on December 17, 2003, Doug Morgan sent Ms.Greisdorf an email about his conversation with Principal Swanson and Jonathan Morgan's desire to hand out his "The Legend of the Candy Cane" gift.  Doug Morgan asked Ms. Greisdorf if giving this gift was a violation of PISD policy.  Ms. Greisdorf responded that Principal Swanson's interpretation was exactly right and that the PISD policies prohibited Jonathan Morgan from distributing his religious gifts.  Ms. Greisdorf also stated that no student could

distribute a religious viewpoint gift while on school property and that Jonathan Morgan could only disseminate his information by placing it on the information table or by distributing it off school property.

On December 19, 2003, Doug and Jonathan Morgan went to the Thomas Elementary School office to attempt to meet with Principal Swanson prior to Jonathan Morgan taking his goodie bags to class, but Principal Swanson was not able to meet with them.  Doug and Jonathan Morgan took Jonathan's tray of goodie bags, which contained "The Legend of the Candy Cane" bookmarks, to the classroom and placed the tray outside of the classroom.  Jonathan Morgan's teacher Ms. Helmke told Doug and Jonathan Morgan that Jonathan could only place his goodie bags in the school library and could not bring them into the classroom because the bags contained religious material.  Other students were allowed to bring their goodie bags into the classroom. Principal Swanson arrived at Ms. Helmke's classroom and said that Jonathan Morgan could only place his goodie bags in the school library, but Principal Swanson did not require other students to take their goodie bags to the school library.  Doug Morgan informed Swanson that Ms. Helmke told him that Jonathan Morgan's materials were not permitted in the classroom because of the religious viewpoint they contained, and Principal Swanson stated that Ms. Helmke had acted in accordance with PISD policy.  Principal Swanson then made an announcement that students could not take materials into the classroom.

On December 19, 2003, Doug and Robin Morgan again went to meet with Principal Swanson before the party.  Principal Swanson again confirmed that Jonathan Morgan could not hand out his gifts that contained a religious message at the party.  Doug Morgan asked if he could distribute the gifts to other parents, but Swanson stated that Doug Morgan could not distribute

the laminated "The Legend of the Candy Cane" cards to adults.[4]  Principal Swanson then went to Jonathan Morgan's classroom and informed Doug Morgan that the distribution rules for religious materials applicable to students were also applicable to parents and that he would only be permitted to distribute the laminated cards in the library or off campus.  During the 2003 Winter Break party, other students were allowed to give gifts, and Mrs. Helmke distributed pencils bearing a picture of a snowman to the students.

### 3.  2003-2004 Hughston Elementary

On January 20, 2004, Sunny Shell sent an email to Ms. Greisdorf concerning the distribution at school of tickets to the Harvest Rally, a religious event being sponsored by Prestonwood Baptist Church.  Ms. Greisdorf referred Sunny Shell to Policy FNAA (LOCAL) and directed Shell to contact her school principal.  On January 22, 2004, Sunny Shell met with Hughston Elementary Principal Collins and asked if Kevin and Michael Shell could disseminate, share or offer the Harvest Rally tickets during non-instructional time and in a non-disruptive manner.  Principal Collins stated that according to PISD policy, Kevin and Michael Shell would never be permitted to distribute religious materials while on school property and could not make an announcement about the tickets in class or during recess.  On January 26, 2004, Sunny Shell emailed PISD Superintendent Dr. Doug Otto concerning the distribution of tickets to religious viewpoint events to students while on school property.  Ultimately, Michael and Kevin Shell were not permitted to distribute tickets to the Harvest Rally while at school, but other students were permitted to exchange non-school materials on school property.  Sunny Shell did not

---

[4]Parents were invited to attend the 2003 Winter Break party at Thomas Elementary School.

receive any response from Ms. Greisdorf or Dr. Otto indicating that Kevin and Michael Shell

would be permitted to distribute the Harvest Rally tickets

**4.  2004 Rasor Elementary School**

In 2004, Stephanie Versher, a student at Rasor Elementary, spoke to classmates with

whom she was in close association, about a drama depicting the crucifixion of Jesus Christ at her

church.  If the students expressed an interest in attending, Stephanie Versher would give the

student a free ticket.  The principal of Rasor Elementary, Jackie Bomchill, instructed Stephanie

Versher's teacher to stop Stephanie from distributing the tickets and to require the students who

had already received a ticket to return it.  Stephanie Versher's teacher instructed her to stop

distributing the free tickets to her classmates while school property.  The tickets that Stephanie

Versher had already given to her classmates were collected by the teacher and discarded.

At Rasor Elementary, if a student's birthday falls in the summer months, the student may

celebrate her "half birthday" during the school year with her classmates at school.  Stephanie

Versher wanted to celebrate her half birthday at school with her classmates on January 16, 2004.

Other students had celebrated their birthdays and half birthdays prior to January 16, 2004, and on

those occasions, the students would distribute a snack and a small gift to their friends and

classmates.  Stephanie Versher and her sister Susan had received various gifts at the parties of

other students, including a Chinese Bookmark with a printed message on it, a Lion King ring

containing words and symbols, a pencil with an eraser and picture of penguins, a pencil bearing

various symbols, and a pencil with the words "Where's Hippo?" printed on it.  Bomchill had

never prohibited these gifts prior to January 16, 2004.

The half birthday parties are celebrated during non-curriculum time at school — usually at the end of the lunch period or during a snack break between instructional periods.  Stephanie Versher wanted to bring brownies and pencils bearing the words "Jesus loves me this I know for the Bible tells me so" to distribute to her friends and classmates.  Sherrie Versher, Stephanie Versher's mother, obtained two types of pencils for Stephanie to hand out at her half birthday party.  One was the "Jesus love me" pencil, and the other was a pencil with the word "Moon" printed on it.  Pursuant to a school rule concerning distribution of candy and food at school, Sherrie Versher went to school to meet with Principal Bomchill on January 15, 2004 in order to obtain permission to distribute brownies the following day, but Principal Bomchill was unable to meet with Sherrie Versher that day.  On January 16, 2004, Sherrie Versher took her brownies and the two pencils that Stephanie wanted to give to her classmates — one religious, one secular — to the school office and requested to see Principal Bomchill.

Upon arriving at Principal Bomchill's office, John Beasley, with PISD Security Police Services, handed Sherrie Versher a letter in which Beasley accused Sherrie Versher of a violation of PISD policies by distributing materials to students on school property at Rasor Elementary and informed Sherrie Versher that law enforcement officials would be called to the school to arrest Sherrie Versher.  The letter specifically cited PISD policy "GKD Local Community Relations: Use of School Facilities for Non-School Purposes; Subsection titled Distribution of Non-School Literature."  Sherrie Versher believed Beasley's letter to be a threat in response to the lawful exercise of her Constitutional rights.  Sherrie Versher was then escorted into Principal Bomchill's office.

Principal Bomchill informed Sherrie Versher that if her daughter did not cease distributing religious materials while on school property, the police would be called; Principal Bomchill stated that Stephanie Versher could only distribute religious tickets and religious pencils outside the school building.  Sherrie Versher showed Principal Bomchill the brownies and pencils that Stephanie planned to distribute that day.  Principal Bomchill informed Sherrie Versher that Stephanie could hand out the brownies and the "Moon" pencils, but that she could not hand out the "Jesus loves me" pencils.  Sherrie Versher then asked if she could speak with an attorney regarding the legal restrictions PISD could place on the religious pencils.  Sherrie Versher ultimately removed the religious pencils from the gift and placed them in her purse.

Sherrie Versher left the office with her tray of brownies and the "Moon" pencils, and as she exited the office she "thought out loud to herself 'Satan is in the building.'"  Sherrie Versher then carried the brownies and the "Moon" pencils to the party.  Beasley followed her and stood against the wall near the party.  After the party concluded, Sherrie Versher walked Stephanie to her locker and handed the "Jesus loves me" pencils to Stephanie and told her to put them in her backpack and not take them out during school.  Sherrie Versher then told her daughter that she could distribute the pencils after school on the school lawn. Sherrie Versher then proceeded to the second-grade wing of the building where her younger daughter was a student.  Beasley followed her down the second-grade wing and when Sherrie Versher inquired why he was following her, Beasley stated that he was escorting her out of the building and advised her that the police were on their way.  Beasley stated that Sherrie Versher had made a threat and created a disturbance.  As Sherrie Versher exited the Rasor Elementary campus, she was pulled over by

two Plano police officers.  One of the officers inquired about the threat, and ultimately, Sherrie Versher was allowed to leave.

After school, Stephanie Versher attempted to distribute her "Jesus loves me" pencils to her friends on the school lawn.  Principal Bomchill took away a pencil that Stephanie had handed to one of her friends and told Stephanie that she was in violation of PISD policy; Stephanie was not allowed to distribute religious viewpoint pencils while on school property.  Principal Bomchill and Beasley then approached Sherrie Versher and stated that if Stephanie tried to distribute her religious pencils while on school property again, she would be kicked out of school.

## Discussion

The Individual Defendants moved to dismiss the claims against them, and in the alternative, moved for summary judgment on the claims against them.  A stay on discovery in this case is currently in place and a motion for summary judgment is therefore premature. Accordingly, the court will treat the Individual Defendants motion as a motion to dismiss on the basis of qualified immunity pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997).  For a complaint to be dismissed for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957); *Reeves v. City of Jackson, Mississippi,* 532 F.2d 491 (5th Cir. 1976).  The Court must accept as true all

well-pleaded facts contained in plaintiff's complaint and view them in the light most favorable to

the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). In addition, all reasonable

inferences are to be drawn in favor of the plaintiff's claims. *Lowrey,* 117 F.3d at 247. The

ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of

action when it is examined in the light most favorable to the plaintiff and with every doubt

resolved in the plaintiff's favor. *Lowrey,* 117 F.3d at 247. However, to survive a Rule 12(b)(6)

motion, the plaintiff must plead specific facts, not mere conclusory allegations. *Guidry v. Bank*

*of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992).

**Qualified Immunity**

The Individual Defendants raise the defense of qualified immunity to the claims against

them. Qualified immunity shields government officials performing discretionary functions from

individual liability for civil damages "insofar as their conduct does not violate clearly established

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800,

818, 102 S. Ct. 2727, 2738, 73 L. Ed.2d 396 (1982); *Thompson v. Upshur County*, 245 F.3d 447,

456 (5th Cir. 2001). Qualified immunity serves to ensure that before a government official can

be subjected to suit in her individual capacity, she is on notice that her conduct is unlawful.

*Saucier v. Katz*, 533 U.S. 194, 206, 121 S. Ct. 2151, 2158, 150 L. Ed.2d 272 (2001). Whether a

government official is shielded from suit by qualified immunity is determined by a two-step

analysis. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004); *see also McClendon v.*

*City of Columbia* , 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes

qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the

defense). First, the court must determine whether the plaintiffs' allegations, if true, establish a

constitutional violation.  *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513, 153 L. Ed.2d

666 (2002).  And when qualified immunity is asserted, Plaintiffs are required to specifically

plead the facts establishing the right to recover.  *Shultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir.

1995).  Second, the court must determine whether a particular defendant's actions violated

"clearly established statutory or constitutional rights of which a reasonable person would have

known."  *Hope*, 536 U.S. at 739.

> For a constitutional right to be clearly established, its contours "must be
> sufficiently clear that a reasonable official would understand that what he is doing
> violates that right. This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held unlawful, . .
> . but it is to say that in the light of pre-existing law the unlawfulness must be
> apparent."

*Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523

(1987)) (internal citation omitted).

**First Amendment**

Plaintiffs generally argue that the Individual Defendants imposed unlawful prior restraints

on Plaintiffs, and more specifically, Plaintiffs argue that each named individual defendant is not

entitled to qualified immunity because he or she engaged in viewpoint discrimination.

*Prior Restraints*

It has been long recognized that "ordinances regulating speech contingent on the will of

an official– such as the requirement of a license or permit that may be withheld or granted in the

discretion of an official– are unconstitutional burdens on speech classified as prior restraints."

*Chiu, et al. v. Plano Independent School District, et al.*, 339 F.3d 273, 280 (5th Cir. 2003).  And

a "prohibition on the distribution of literature is a classic form of prior restraint."  *Id.*  There is

-14-

nothing *per se* unconstitutional about a requirement that students submit materials to school officials before distributing those materials. *Shanley v. Northeast Independent School District*, 462 F.2d 960, 969 (5th Cir. 1972).  However, a rule "'subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.'" *Chiu*, 339 F.3d at 280. (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1075)).  "A party enforcing a prior restraint 'carries a heavy burden of showing justification for the imposition of such a restraint.'" *Id*. (quoting *Org. For a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S. Ct. 1575, 29 L. Ed. 2d 1 (1971)).  The Fifth Circuit in *Chiu* held that prior restraints were unconstitutional, even in schools, except where they "are designed to maintain discipline or to prevent school disruption and are narrowly drawn to achieve that end." *Id*.

*Viewpoint Discrimination*

Plaintiffs also allege viewpoint discrimination.  "'The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Chiu v. Plano Independent School District*, 260 F.3d 330, 350-51 (5th Cir. 2001) (quoting *Rosenberger v. Rector & Visitors Univ. of Va.*, 515 U.S. 819, 828, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995)). "Viewpoint discrimination violates the First Amendment regardless of the forum's classification." *Hobbs v. Hawkins* , 968 F.2d 471, 481 (5th Cir. 1992).  When school regulations are directed at specific student viewpoints, those viewpoints are governed by the standard of scrutiny set out in *Tinker v. Des Moines Independent Community School District*. *Canady v. Bossier Parish School Board*, 240 F.3d 437, 442 (5th Cir. 2001).  In *Tinker*,  the United State Supreme Court held that First Amendment rights were

-15-

available to students and teachers while at school and stated that "[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506, 89 S. Ct. 733, 736 21 L. Ed. 2d 731 (1969). *Tinker* was a viewpoint discrimination case in which school officials suspended students from public high school because they wore black armbands to school to protest the Vietnam War.  Students were suspended based on the political viewpoint of their speech.  The Court found it relevant that the school authorities did not purport to prohibit the wearing of all political or controversial symbols.  Students in some of the district's schools wore buttons relating to national political campaigns, and some wore Iron Crosses.  The order prohibiting armbands did not extend to these, so the Court found that "[c]learly, the prohibition on expression of one particular opinion, at least without evidence that it is necessary to avoid material and substantial interference with schoolwork or discipline, is not constitutionally permissible." *Tinker*, 89 S. Ct. at 738-39  Thus, when a school regulation is directed at restricting a student's expression of a particular viewpoint, the school must demonstrate that the expression would "'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school.'" *Id*. at 738.  Otherwise, that regulation is unconstitutional.

Plaintiffs have alleged claims against seven different PISD employees and officials in their individual capacities based on at least four different occurrences at various PISD campuses. Therefore, the Court will address each individual defendant in turn.

-16-

### 1.    *Lisa Long, Principal of Wells Elementary School*

First, the Court must determine whether Plaintiffs allegations, if true, establish a

constitutional violation on the part of Principal Long.  Plaintiffs have alleged in their Second

Amended Complaint that Principal Long abridged the First Amendment rights of Kevin Shell by

directing Ms. Snyder to prohibit Kevin from announcing, discussing or distributing his religious

viewpoint tickets while on school property.  Specifically, Kevin Shell alleges that under the

direction of Principal Long, Snyder informed Kevin Shell that the tickets he wished to distribute

to his classmates, inviting them to the Prestonwood Baptist Church sunrise service, were

inappropriate materials for student-to-student distribution or discussion while on school property

because of the religious viewpoint of the materials.  Despite Ms. Snyder's instructions, Kevin

brought the tickets to school for distribution, and Plaintiffs allege that on the direction of

Principal Long, Snyder instructed Kevin that he could not, at any time while on school property,

discuss or distribute tickets to the sunrise service.  On one more occasion in the spring of 2003,

Kevin Shell brought tickets for a program at Prestonwood Baptist Church to distribute to his

classmates at school.  Ms. Snyder did not allow Kevin to announce that he had tickets for

distribution or to offer tickets to his classmates.  When Sunny Shell, Kevin's mother, contacted

Principal Long and inquired why Kevin was not able to announce and distribute the tickets,

Principal Long allegedly responded that perhaps Ms. Snyder misunderstood PISD policy.

With respect to Principal Long, Plaintiffs do not specifically argue that Long imposed a

prior restraint on Kevin Shell's distribution of tickets to a religious event.  Kevin was not asked

to submit materials for review by a school official prior to distribution.  Instead, Plaintiffs allege

that Principal Long engaged in viewpoint discrimination by forbidding the announcement,

distribution or even the discussion of the tickets to religious events at Prestonwood Baptist

Church by Kevin Shell to his classmates while on school property.  Accepting the facts pled in

the Second Amended Complaint as true, Plaintiffs have alleged facts that would establish

viewpoint discrimination on the part of Principal Long.  Under *Tinker*, this type of prohibition on

expression is unconstitutional unless the Principal Long can show that the distribution of the

tickets caused a material or substantial interference with schoolwork or discipline.  Plaintiffs

allege that, even upon Sunny Shell's inquiry, no explanation was offered for the refusal to allow

Kevin Shell to distribute religious viewpoint tickets.  Therefore, under the facts as alleged by

Plaintiffs, Principal Long failed to establish that Kevin Shell's distribution of tickets to religious

events at Prestonwood Baptist church would cause a material or substantial disruption of

schoolwork or discipline.  As a result, Plaintiffs have pled facts sufficient to establish a

constitutional violation on the part of Principal Long.

　　　　Next the court must determine whether Principal Long's actions violated clearly

established statutory or constitutional rights of which a reasonable person would have known.

*Tinker* was decided more than thirty years prior to the alleged unconstitutional acts were

committed by Principal Long in the spring of 2003.  In 2001, the Fifth Circuit specifically stated

in *Canady* that *Tinker* provided the applicable standard of scrutiny to be applied when a school

official engages in viewpoint discrimination.  And in July of 2003, only months after the acts

allegedly committed by Principal Long occurred, the Fifth Circuit in *Chiu*, specifically found that

a reasonable school official would know that engaging in viewpoint discrimination was unlawful.

Therefore, a reasonable school official in Principal Long's position would have known that

prohibiting speech based on the viewpoint of the expression is a violation of clearly established

constitutional rights.  Principal Long is not entitled to dismissal under Federal Rule of Civil

Procedure 12(b)(6) on the basis of qualified immunity.

### 2. *Suzie Snyder, Teacher at Wells Elementary School*

As previously discussed with respect to Principal Long, Ms. Snyder's prohibition of

announcing, distributing or discussing religious materials while on school property constitutes

viewpoint discrimination.  Taking the facts as Plaintiffs have alleged them as true, Ms. Snyder

failed to establish that Kevin Shell's distribution of tickets to religious events at his church would

cause a material and substantial disruption.  Ms. Snyder did not simply forbid Kevin from

discussion or distribution of his religious viewpoint materials during class; rather, she allegedly

prohibited the discussion or distribution of the tickets at all times while on school property.

Accordingly, Plaintiffs allegations, if true, establish a constitutional violation.

As previously set forth with respect to Principal Long, the law regarding a school

official's viewpoint discrimination was clearly established at the time that Ms. Snyder allegedly

prohibited Kevin Shell's distribution or discussion of religious materials while on school

property.  Accordingly, Ms. Snyder is not entitled to dismissal of the claims against her on the

basis of qualified immunity.

### 3. **Lynn Swanson, Principal of Thomas Elementary School**

With respect to Principal Swanson, the court must initially determine whether Plaintiffs

allegations, if true, establish a constitutional violation.  Plaintiffs have alleged in their Second

Amended Complaint that Principal Swanson abridged Jonathan Morgan's First Amendment

rights by prohibiting Jonathan from distributing a bookmark containing a religious message —

"The Legend of the Candy Cane" — to his classmates at the Thomas Elementary Winter Break

party because of the religious message it contained.  Plaintiffs contend that Principal Swanson confirmed to Doug Morgan that in previous years, teachers had questioned parents and students regarding whether their goodie bags contained religious viewpoint or religious reference materials and had confiscated such materials.  Principal Swanson also indicated that school officials at Thomas Elementary would continue that practice.  On December 19, 2003, the day of the Winter Break party, Jonathan Morgan was prohibited from bringing his goodie bags into the classroom and was instructed that he could only leave his goodie bags on the distribution table in the library because the bags contained religious material.  Other students were permitted to bring their goodie bags into the classroom.  Principal Swanson informed Doug Morgan that Jonathan's teacher had acted in accordance with PISD policy by directing Jonathan to place his goodie bags on the distribution table in the library instead of in classroom because of their religious content. The fact that PISD officials questioned students regarding the contents of their goodie bags could arguably be considered a prior restraint.  However, PISD allegedly only questioned students and parents about whether their goodie bags contained religious viewpoint material.  It appears that the Plaintiffs are actually alleging viewpoint discrimination.  PISD officials were not reviewing the materials in order to issue a license or approval; rather, they were solely looking for religious viewpoint materials and confiscating any such materials.  These allegations that Swanson committed viewpoint discrimination, without her having established that Jonathan's distribution of the bookmarks would cause a material and substantial disruption of schoolwork or discipline, are sufficient to establish a constitutional violation by Principal Swanson.

Next the court must determine whether the constitutional violation was clearly established at the time of the alleged acts by Principal Swanson such that a reasonable person in

her position would have known of the illegality of her actions.  The court is of the opinion that the law was clearly established under *Tinker*, *Canady* and *Chiu* as previously discussed with regard to the distribution of Jonathan Morgan's religious viewpoint bookmarks during a Winter Break party in which students were allowed to distribute secular gifts without incident.

The Individual Defendants argue that *Waltz v. Egg Harbor Township Bd. of Edu.*, 342 F.3d 272 (3d Cir. 2003) creates uncertainty as to whether the law was clearly established. However, *Waltz* does not create an ambiguity as to the state of the law in this circuit based on the facts alleged by Plaintiffs.  In *Waltz*, the plaintiff student also wanted to distribute a gift to his classmates that had a religious message during the holiday party, but the gifts distributed to the students were neutral gifts collected by the parent teacher organization beforehand and distributed by the parents at the party.  Students were not only prohibited from distributing religious gifts, but were also prohibited from distributing gifts with a political or a commercial message pursuant to an unwritten school policy.  *Id*. at 273.  Additionally, in *Waltz*, the plaintiff student was allowed to distribute his gifts containing a religious message at recess, after school and in the hallways.  *Id*. at 280.  In the present case, the individual students themselves brought goodie bags to school for distribution to their classmates.  Further, Plaintiffs allege that Jonathan Morgan was not allowed to distribute his gifts containing a religious message at all while he was on school property; rather, he could only leave his goodie bags on a table in the library, while other students could hand out gifts that contained secular messages in the classroom.  *Waltz* is not binding authority in this circuit and even though it can be considered persuasive authority, it does not cast doubt onto the status of the law that binds this court with respect to viewpoint discrimination.

Plaintiffs also allege that Principal Swanson infringed on the constitutional rights of Doug and Robin Morgan by not allowing them to distribute the "Legend of the Candy Cane" bookmarks to other parents at the party because of the religious nature of the bookmark.  In order to determine whether the rights of Doug and Robin Morgan were abridged, the court would typically need to conduct a forum analysis.  However, as set out in *Chiu*, viewpoint discrimination is unconstitutional regardless of the forum.  Therefore, for purposes of the Individual Defendants' motion to dismiss pursuant to Rule 12(b)(6), Plaintiffs have alleged facts that, taken as true, establish that Swanson violated the constitutional rights of Doug and Robin Morgan.

With respect to Principal Swanson's prohibiting the distribution of the bookmarks from Doug and Robin Morgan to other parents at the Winter Break party, the law was also clearly established.  In July of 2003, roughly five months prior to the 2003 Winter Break party, the Fifth Circuit specifically held that viewpoint discrimination was unconstitutional regardless of the forum.[5]  *Chiu*, 260 F.3d at 350-51.  Accordingly, Principal Swanson is not entitled to dismissal on the basis of qualified immunity.

### 4.      Dr. Doug Otto, Superintendent of Plano Independent School District

In January of 2004, Sunny Shell's children Kevin and Michael Shell again wished to distribute tickets to a Harvest Rally being held at Prestonwood Baptist Church.  During 2004, Kevin and Michael Shell attended Hughston Elementary.  The principal of Hughston elementary informed Sunny Shell that Kevin and Michael Shell would never be permitted to distribute

---

[5]Plano ISD was a party to that litigation; therefore, PISD officials should have known about the status of the law with respect to viewpoint discrimination.

religious materials while on school property and could not make an announcement about the

tickets during class or recess.  Plaintiffs allege that on January 26, 2004, Sunny Shell emailed Dr.

Otto concerning the distribution of tickets to religious viewpoint events while on school property.

Plaintiffs further allege that Sunny Shell did not receive a response from Dr. Otto indicating that

Kevin and Michael Shell would be permitted to distribute the tickets to the Harvest Rally.

Plaintiffs seek to hold Dr. Otto individually liable for civil damages based on these

allegations.  Plaintiffs have failed to make any allegation that Dr. Otto specifically prohibited any

expression on the part of the Shells, much less an allegation that he did so based on the viewpoint

of the expression.  Taking the facts alleged in the Second Amended complaint as true, Plaintiffs

have failed to establish a cause of action against Dr. Otto in his individual capacity; rather, Dr.

Otto is entitled to dismissal of the claims against him in his individual capcity under the doctrine

of qualified immunity.

### 5.    John Beasley, Security Police Specialist for Plano ISD's East Cluster

First, the court must determine whether Plaintiffs allegations against Mr. Beasley in his

individual capacity, if true, establish a constitutional violation.  Plaintiffs have alleged in their

Second Amended Complaint that Mr. Beasely threatened Sherrie Versher in response to the

exercise of her constitutional rights by delivering a letter to Ms. Versher upon her arrival at

Principal Jackie Bomchill's office on January 16, 2004.  Plaintiffs allege that on January 15,

2004, Ms. Versher attempted to meet with Principal Bomchill in order to obtain permission for

her daughter Stephanie Versher to distribute brownies the following day at her half birthday

party.  Principal Bomchill was not available on January 15, 2004, so Ms. Versher again

attempted to meet with Principal Bomchill immediately before Stephanie's half birthday party on

January 16, 2004, in order to obtain permission for Stephanie to distribute brownies and two pencils to her classmates.  It was upon her arrival at Principal Bomchill's office that Mr. Beasley handed her the letter he had prepared, which referred her to PISD policies and informed her that if she violated the policies, law enforcement officials would be called.   Prior to the delivery of this letter, Plaintiffs only allege that Sherrie Versher attempted to meet with Principal Bomchill to obtain permission to pass out brownies.  From the facts alleged, it does not appear that Sherrie Versher has a constitutional right to pass out brownies; therefore, Mr. Beasley's letter could not be for the purpose of retaliating against Ms. Versher for exercising her constitutional rights.

Plaintiffs further allege that Ms. Versher met with Principal Bomchill on January 16, 2004, and Principal Bomchill informed her that Stephanie would not be allowed to distribute her a pencil bearing the words "Jesus loves me this I know for the Bible tells me so," but that Stephanie would be able to distribute a pencil with the word "Moon" written on it.  While exiting the office after this meeting with Principal Bomchill, Ms. Versher "thought aloud to herself "Satan is in the building.'" After this occurrence, Mr. Beasley followed Ms. Versher to Stephanie's half birthday party and watched her from a distance.  At the conclusion of the party, Ms. Versher walked Stephanie to her locker, then she proceeded down another hallway of the building.  Mr. Beasley followed her down the hall and upon Ms. Versher's inquiry as to why he was following her, Mr. Beasley replied that he was escorting her out of the building and that the authorities had been called.  Mr. Beasley provides security for PISD, and it appears that after Ms. Versher had audibly uttered "Satan is in the Building" and continued to roam the halls of the elementary school after her daughter's half birthday was completed, Mr. Beasley would be acting within his authority to ask her to leave the building.  For the safety of the students, adults should

-24-

not be allowed to roam through the halls of an elementary school without permission from the school administration.  Accordingly, Mr. Beasely did not violate Sherrie Verhser's constitutional rights by instructing her to leave the building at the conclusion of the half birthday party.

Finally, Plaintiffs appear to allege that Mr. Beasley abridged Stephanie Versher's First Amendment rights by prohibiting her from passing out her "Jesus love me" pencils after school hours on school property.  Plaintiffs allege that Ms. Bomchill took away a pencil that Stephanie had distributed to a friend, informed Stephanie that she was in violation of PISD policy, and stated that Stephanie was not allowed to distribute religious pencils while on school property. Plaintiffs then allege that Bomchill and Beasley approached Sherrie Versher and stated that if Stephanie tried to distribute Christian tickets or "Jesus" pencils again, she would be kicked out of school.  The court is of the opinion that this does not rise to the level of a constitutional violation on the part of Mr. Beasley.  Mr. Beasley did not actually prohibit Stephanie from distributing her pencils, and the Second Amended Complaint is vague as to who actually told Sherrie Versher that her daughter would be expelled if she continued to distribute religious tickets and "Jesus" pencils.  Further, when qualified immunity is asserted, Plaintiffs are required to specifically plead the facts establishing the right to recover.  *Shultea v. Wood*, 47 F.3d at 1430.  Plaintiffs have simply failed to allege with sufficient specificity that Beasley prevented Versher or her daughter from distributing religious materials.  The court finds that, even when viewing the Second Amended Complaint in the light most favorable to the Plaintiffs, they have failed to meet their burden for establishing the inapplicability of the defense of qualified immunity with respect to Mr. Beasley because Plaintiffs have failed to allege a constitutional violation.  Accordingly, the

Individual Defendants Motion to Dismiss on the Basis of Qualified Immunity should be granted with respect to Mr. Beasley.

### 6. Carole Greisdorf, Assistant Superintendent of Plano Independent School District

The court must first determine whether Plaintiffs have alleged a constitutional violation on the part of Ms. Greisdorf.  In Dcember of 2003, Doug Morgan contacted Ms. Greisdorf to inquire about the student to student distribution of religious material.  Ms. Greisdorf suggested that Doug Morgan set up a meeting with Principal Swanson to discuss the matter.  After Doug Morgan met with Principal Swanson, he emailed Ms. Greisdorf about his conversation with Principal Swanson.  Doug Morgan also asked whether Jonathan Morgan could distribute his "The Legend of the Candy Cane" bookmark gifts.  Ms. Greisdorf responed that Principal Swanson's interpretation of the policy was correct and that no student could distribute religious viewpoint gifts while on school property.  Ms. Greisdorf stated that Jonathan Morgan could only disseminate his information by placing it on the information table or by distributing it off campus.  Two days later, Doug Morgan and Jonathan Morgan took Jonathan's goodie bags that contained "The Legend of the Candy Cane" bookmark gifts to school.  Plaintiffs do not allege that Ms. Greisdorf prohibited or prevented Jonathan Morgan from distributing his religious viewpoint gifts.  In fact, when taking the facts as Plaintff alleges them to be true, Ms. Greisdorf's statements did not deter Jonathan Morgan at all from bringing his religious viewpoint gifts to school for distribution.  As a result, Plaintiffs have failed to plead facts establishing that Ms. Greisdorf violated the constitutional rights of Jonathan Morgan.

Plaintiffs also allege that in May of 2003, after Principal Long and Ms. Snyder had prohibited Kevin Shell from distributing tickets to religious events at school, Sunny Shell asked Ms. Greisdorf to provide the correct interpretation and application of the PISD policy regarding announcing and distributing materials from one student to another.  Ms. Greisdorf allegedly stated that under PISD policy, the Shells could not announce or offer religious materials or religious information to another student at any time while on school property.  Plaintiffs do not allege that Ms. Greisdorf actually prohibited Kevin and Michael Shell from passing out tickets to religious events.  Instead, Plaintiffs simply allege that Sunny Shell contacted Ms. Greisdorf after the distribution had already been prohibited by Principal Long and Ms. Snyder.  Plaintiffs have simply failed to allege a constitutional violation by Ms. Greisdorf with respect to Kevin and Michael Shell.

Sunny Shell again contacted Ms. Greisdorf in 2004 to inquire about Kevin and Michael Shell's distribution of Harvest Rally tickets.  Harvest Rally was an event sponsored by Prestonwood Baptist Church.  Ms. Greisdorf responded by referring Sunny Shell to policy FNAA (LOCAL) and directed her to contact her school principal.  Again, Plaintiffs have failed to allege that Ms. Greisdorf prohibited the distribution of religious viewpoint tickets.

Because Plaintiffs have not alleged facts that would establish that Ms. Greisdorf violated the constitutional rights of any of the plaintiffs, the Individual Defendants' Motion to Dismiss on the Basis of Qualified Immunity should be granted with respect to Carole Greisdorf.

*Establishment Clause Considerations*

The Individual Defendants also argue that the contours of the law were not clearly established because the distribution in question raises potential Establishment Clause violations

-27-

on the part of PISD employees.  In support of their argument, the Individual Defendants rely on

*Bell v. Little Axe Independent School District*, 766 F.2d 1391 (10th Cir. 1985).  In *Bell*, teachers

were initially supervising and participating in religiously-oriented meetings involving students

and non-students immediately before school.  *Id*. at 1397.  Eventually, teachers were disallowed

from participating, but one teacher was required to monitor the student-led activity.  The Tenth

Circuit found it significant that the teachers had participated in the meetings at one time when

finding that the presence of even one teacher produced the same appearance of school

authorization or approval.  *Id.* at 1405.

While this case may be instructive, it is not binding authority, and the court finds that it is

not applicable to the facts as alleged by Plaintiffs.  Plaintiffs allege that students were prohibited

from distributing religious viewpoint material to other students, not only during instructional

times, but at all times while on school property.  Jonathan Morgan did seek to distribute his

religious gift in the classroom during a Winter Break party, but he sought to distribute it during a

party in a closed bag bearing a sticker that read: "To [classmate's name] From: Jonathan

Morgan."  Taking the facts as Plaintiffs have alleged them to be true, Establishment Clause

concerns do not muddy the waters as to the clearly established law in this circuit prohibiting

viewpoint discrimination.

### Conclusion

For the foregoing reasons, the Individual Defendants' Motion to Dismiss on the Basis of

Qualified Immunity should be Denied with respect to Lisa Long in her individual capacity, Suzie

Snyder in her individual capacity and Lynn Swanson in her individual capacity.  The Individual

Defendants' Motion to Dismiss on the Basis of Qualified Immunity should be Granted with

respect to Dr. Doug Otto in his individual capacity, John Beasley in his individual capacity and Carole Greisdorf in her individual capacity.

### Recommendation

Based upon the foregoing, it is the Court's recommendation that Individual Defendants' Motion to Dismiss Based on Qualified Immunity [Doc. No. 30] should be GRANTED in PART and DENIED in PART.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A.  § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 16th day of February, 2007.**

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE