IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| JONATHAN MORGAN, et al. § | |
| § | |
| Plaintiffs, § | |
| § | |
| V. § | CASE NO. 4:04CV447 |
| § | |
| § | |
| THE PLANO INDEPENDENT § | |
| SCHOOL DISTRICT, et al. § | |
| § | |
| Defendants. § | |

## REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

Before the Court are The Plano Independent School District's ("PISD") Motion for Partial Summary Judgment on Plaintiffs' Texas Constitutional Claims and Plaintiffs' TRFRA claims (Dkt. 278) and PISD's Supplement to Motion for Partial Summary Judgment on Plaintiffs' Texas Constitution Claims and Plaintiffs' TRFRA Claims (Dkt. 286). After considering the briefs and arguments of counsel, the Court finds that the motions should be GRANTED in part and DENIED in part.

The genesis of this case is well known to all. The story begins with a simple candy cane and, like the message conveyed, has no end. This Court and the Fifth Circuit have upheld the 2005 policy as to its constitutionality. This Court has also upheld the facial constitutionality of the 2004 policy. The Fifth Circuit *en banc* has held that various administrators were entitled to qualified immunity. After seven years, the issues have narrowed. Yet, the case proceeds on with both parties having very

divergent views of the law and how the law applies to the case.

Perhaps the real question in cases of such ilk is, at what point does a right to freedom of religious expression cross the establishment line? Is the free exercise of the former an implicit fostering of the latter? Or is the question more narrow? To what lengths should government accommodate freedom of religious expression and how compelling do the reasons for stifling religious expression have to be?

Unfortunately, courts have been none too helpful in this area, as the Fifth Circuit has recently noted. *See Morgan v. Swanson*, 659 F.3d 359, 364 (5th Cir. 2011). And, drawing a line in the sand is a useless exercise in the midst of a cyclone. So peradventure, courts will continue to piece together the "constitutional puzzle," often with conflicting and puzzling results.

Here the Court is called upon to determine Defendant PISD's request for judgment dismissing Plaintiffs' claims for monetary, injunctive and declaratory relief under both the Texas Constitution and the Texas Religious Freedom Restoration Act.

**Whether PISD violated the Texas Constitution Article I , Section 8.**

Article I, Section 8 of the Texas Constitution provides, as is relevant here that, "every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." TEX. CONST. ART. I, § 8. The First Amendment to the United States Constitution provides in part as relevant to this exercise that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech." U.S. CONST.

amend. I.

Thus, on one hand, government cannot establish religion but, on the other, it cannot prohibit the free exercise thereof. In some aspects, the free speech provision in the Texas Constitution is broader than that guaranteed by the First Amendment. *See O'Quinn v. State Bar of Texas*, 763 S.W.2d 397, 402 (Tex. 1988). The question is whether under established precedent the Texas Constitution granted Plaintiffs greater rights as to speech than would be recognized under the First Amendment. In *Woodall v. City of El Paso*, 49 F.3d 1120, 1127 (5th Cir. 1995), the Fifth Circuit noted that the Texas Supreme Court has held that free speech rights under the Texas Constitution may be broader than those provided by the Federal Constitution. *Woodall* held that claims as to land use restrictions under the Texas Constitution should be determined under the same standard as used under the United States Constitution. *Id.* at 1128. That is not to say that all free speech claims under the Texas Constitution are determined under the same standard as the United States Constitution, as PISD appears to argue.

It is fundamental that state courts be left free and unfettered by federal courts in interpreting their state constitutions. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. 1995). Both the Fifth Circuit and the Texas Supreme Court recognize that Article I, section 8 of the Texas Constitution is more expansive than that of the First Amendment. *Id.* at 368 (*citing Davenport v. Garcia*, 834 S.W.2d. 4, 8 (Tex. 1992)). The Texas Constitution expresses free speech guarantees in positive terms, while the United States Constitution expresses such in negative terms. *See Channel 4, KGBT v Briggs*, 759 S.W. 2d 939, 944 (Tex. 1988). Thus, the Texas constitutional right to free speech is not essentially federal, even if the state relies on federal precedents in its

analysis. A Texas constitutional claim is not necessarily a federal claim. *Carpenter,* 44 F.3d at 367.

Moreover, federal courts are bound by a state's interpretation of its laws. *See Mendiola v. Estelle*, 635 F.2d 487 (5th Cir. 1981). It is within the province of state courts to examine the validity and construction of their own constitutions. *Jordan v. Watkins*, 681 F.2d 1067, 1079-80 (5th Cir. 1982). Texas decisions have noted that the Texas constitutional provisions guaranteeing freedom of expression are coextensive with the federal guarantees and have applied the same analysis and principles of construction in interpreting them. *See Reed v. State*, 762 S.W. 2d 640 (Tex. App.-Texarkana, 1988, pet. ref'd). "[Under the Texas Constitution], in non-public forums, such as schools, speech may be restricted so long as the regulations are reasonable and do not attempt to suppress expression because of public officials' opposition to the speaker's views." *Id.* at 644.

Although the state and federal guarantees as to speech are different, Texas cases also acknowledge that the historical practice has been to look to federal cases as an aid in determining free speech questions. *See Texas Tech Univ. Health Sciences Ctr. v. Rao*, 105 S.W. 3d 763 (Tex. App. - Amarillo, 2003, pet. dism'd). Moreover, the Texas Supreme Court has held that, unless a party can show through the text, history and purpose of Article I, Section 8, that the state constitution affords more protections than the First Amendment in regard to a particular case, courts should assume that free speech protections are the same under both constitutions. *Texas Dept. of Transp. v. Barber*, 111 S.W. 3d 86, 106 (Tex. 2003).

Plaintiffs have not offered any evidence that the two constitutional provisions should be treated separately. Therefore, following the Texas Supreme Court's decision, the Court finds that the 2004 and 2005 PISD policies as written are not facially unconstitutional under Article I,

Section 8 of the Texas Constitution. The Court also agrees – and such was conceded by counsel during the oral argument held on the motion – that Plaintiffs have no facts to support any as-applied constitutional claims relating to the 2005 policy. Thus, summary judgment should be granted on that ground also.

Plaintiffs expressly limit their claim to equitable relief for violation of the Texas Constitution. The 2004 policy is no longer in effect. PISD has affirmatively represented that it will not return to the 2004 policy. Therefore, the Court agrees that equitable relief is not appropriate since the controversy is now moot. *See Texas State Bd. of Registration for Prof'l Eng'rs v. Dalton, Hinds & O'Brien Eng'g Co.*, 382 S.W.2d 130 (Tex. Civ. App.- Corpus Christi 1964, no writ). Therefore, PISD should be granted summary judgment on its as-applied claim under the Texas Constitution as to the 2004 policy.

**Whether PISD violated TRFRA, Chapter 110.001 et.seq. of the Texas Civil Practice and Remedies Code.**

A government agency may not substantially burden a person's free exercise of religion unless certain factors are demonstrated. TEX. CIV. PRAC. & REM. CODE § 110.003. "Government agency" is defined as "this state or a municipality or other political subdivision of this state; and any agency of this state or a municipality or other political subdivision of this state, including a department, bureau, board, commission, office, agency, council , or public institution of higher education." *Id*. at § 110.001(a)(2). Under Texas law, school districts are quasi-municipal corporations, that is local public corporations of the same general character as municipal corporations. *See San Antonio Indep.*

*Sch. Dist. v McKinney*, 936 S.W. 2d 279 (Tex. 1996). In addition, the Legislature has defined school districts as political subdivisions of the State, like cities and counties, for purposes of sovereign immunity. TEX. CIV. PRAC. & REM. CODE § 101.001(a)(2)(A)–(B). Therefore, TRFRA applies to the Plano Independent School District.

PISD argues that Plaintiffs may not sue under TRFRA since they failed to give proper notice prior to filing suit. Section 311.034 of the Texas Government Code provides that statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a government entity. TEX. GOVT. CODE ANN. § 311.034. However, this language was not added to the statute until after Plaintiffs filed their complaint. *See* prior version TEX. GOVT. CODE ANN. § 311.034 (effective June 15, 2001 to August 31, 2005) (amended 2005).

Here, notice was given, but not by certified mail. The notice was *faxed* to the members of the PISD board. Therefore, the Court must determine whether the provisions of Texas Civil Practice and Remedies Code Section 110.006 bar the suit. That section provides that a person may not bring an action to assert a claim under TRFRA, unless 60 days before bringing the action, the person gives written notice to the government agency by certified mail, return receipt requested. TEX. CIV. PRAC. & REM. CODE § 110.006.

Here, the notice was given by fax almost a year before suit was filed. The purpose of the statute by its plain meaning is to give the PISD a right to accommodate. *Id.* (subsection titled "Notice; Right to Accommodate"). Therefore, the question is whether the notice requirement is jurisdictional.

6

In *Barr v. City of Sinton*, 295 S.W.3d 287 (Tex. 2009), the Texas Supreme Court noted that the trial court found that Barr failed to give notice as required by the TRFRA. However, neither the Court of Appeals nor the Texas Supreme Court specifically addressed this issue. In fact, the Texas Supreme Court merely noted in a footnote that, although the trial court found that the plaintiffs failed to give notice as required under the TRFRA, the City did not raise this issue on its appeal to the Supreme Court. *Id.* at 292, n8.

While it does not directly deal with TRFRA, the Court finds that, under the Texas Supreme Court's ruling in *Roccaforte v. Jefferson County,* 341 S.W.3d 919 (Tex. 2011), delivery of notice by fax rather certified mail is not a bar to Plaintiffs' claim. In *Roccaforte*, the Texas Supreme Court dealt with post-suit notice requirements but held that notice was sufficient when the notice was hand-delivered rather than sent by certified mail. As the court held, "the statute was not intended to create a procedural trap allowing a county to obtain dismissal even though the appropriate officials have notice of the suit." 341 S.W.3d at 926 (citing *Southern Surety Co. v. McGuire,* 275 S.W. 845, 847 (Tex. Civ. App. - El Paso 1925, writ ref'd) (holding that failure to present written claim to commissioners' court as required by statute did not bar the claim, because "[t]he purpose of the statute was fully accomplished by [oral presentment]"); *Coskey,* 247 S.W.3d at 757 ("The manner of delivery specified by the statute assures that county officials will receive notice of a suit after it has been filed to enable it to respond timely and prepare a defense")). Because the officers had the requisite notice, the Texas Supreme Court concluded that the trial court erred in dismissing Roccaforte's claims. *Id.* at 926-927. Here, notice was given in a format different from that required by the statute but nonetheless notice was given.

PISD also argues that the one-year limitations period under TRFRA bars suit. Section 110.007 of the Texas Civil Practice and Remedies Code states that "[a] person must bring an action to assert a claim for damages under this chapter not later than one year after the date the person knew or should have known of the substantial burden on the person's free exercise of religion." TEX. CIV. PRAC. & REM. CODE § 110.007(a). In this case, the Complaint was filed on December 15, 2004. However, a substantial portion of the Complaint rehashes the history of Plaintiffs' battles with the PISD and demonstrates that much of the aggrieved conduct occurred several years before the Complaint was filed.

It appears to the Court that only three individual Plaintiffs could possibly assert a claim under TRFRA given the one-year limitations period. In other words, unless tolled, any complaints concerning how the PISD interfered with Plaintiffs' exercise of their religious beliefs are barred by limitations if the underlying conduct occurred prior to December 15, 2003.

More than one year prior to filing this suit, the Morgans contacted PISD officials concerning the right of their son to distribute materials. In a December 4, 2003 meeting with Swanson, a principal, they were told that candy canes with a religious message could not be distributed. They clearly knew or should have known of the potential burden relating to distribution of religious materials as an expression of their religious belief.

Plaintiffs again allege that, on December 8, 2003, they were told that any gifts containing religious messages would be confiscated. This was relayed to them by Swanson. On December 17, 2003, a representative of the PISD again communicated with the Morgans and informed them that their son could not disseminate anything of a religious nature. In response to the PISD's position,

counsel for the Morgans sent a letter to the PISD regarding the PISD's refusal to allow distribution of the candy cane with a religious message. On the morning of December 19, 2003, at the winter break (f/k/a Christmas) party, Plaintiffs allege that young Morgan was told he could place his goodie bags in the school library or distribute them on a public sidewalk. According to Plaintiffs' allegations, no other students were so treated.

Section 110.007(b) of the Civil Practice and Remedies Code provides that mailing notice under Section 110.006 tolls the limitations period established under this section until the 75th day after the date on which notice was mailed. TEX. CIV. PRAC. & REM. CODE § 110.007(b). As already discussed, notice was not mailed but rather faxed.[1] Therefore, should Plaintiffs benefit from a tolling of the limitations period? Guided by the holding in *Roccaforte*, *supra*, the Court holds that the limitations period was tolled and that Morgan's complaint under TRFRA is not barred.

The remaining issues regarding TRFRA concern Schell's "Harvest Rally" ticket distribution and Versher's ticket and pencil distribution. All other complaints concerning the PISD as it relates to TRFRA are barred by limitations.

Under TRFRA, the three remaining plaintiffs seek declaratory relief as well as an injunction to prevent the continued violation of TRFRA. However, the three complaints center on the then-existing 2004 policy. This policy was abrogated by the 2005 policy. A declaratory judgement is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *see also* 28 U.S.C. § 2201(a) (declaratory judgment for case of

---

[1] Nothing about this case is ever simple.

9

actual controversy) and *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 569 (5th Cir. 2005) ("28 U.S.C. § 2201 says that a district court 'may' declare the rights and other legal relations of any interested parties."). However, the Declaratory Judgment Act may be used to clarify constitutional imperatives. *Democracy Coal. v. City of Austin,* 141 S.W.3d 282, 296 (Tex. App.– Austin 2004, no pet.). A declaratory judgment will declare the rights, duties, or status of the parties only in an otherwise justiciable controversy. *Id.* at 297.

The justiciable controversy presented is whether the PISD violated Plaintiffs' rights under TRFRA. Since Plaintiffs have asked for attorneys fees, the Court finds that it must determine whether Plaintiffs' rights were violated. However, any request for injunctive relief as to the 2004 policy is now moot.

As applicable, TRFRA applies to any practice of governmental authority. *See* TEX. CIV. PRAC. & REM. CODE § 110.002(a). The Act also applies to an act of a government agency, in the exercise of governmental authority, granting or refusing to grant a government benefit to an individual. *Id.* at § 110.002(b). TRFRA states that a government agency may not substantially burden a person's free exercise of religion. *Id.* at § 110.003(a). However, the foregoing does not apply if the government agency demonstrates that the application of the burden to the person is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that interest. *Id.* at §110.003(b). The statute directs that in determining whether an interest is a compelling governmental interest, a court shall give weight to the interpretation of compelling interest in federal case law relating to the free exercise of religion clause of the First Amendment of the United States Constitution. The 2004 policy has been held to be constitutional therefore, the

Court finds that the written policy does not violate TRFRA when applying this analysis.

But TRFRA extends more than just to a written policy and also includes any practice. "Practice" is defined as actual performance or application or a repeated or customary action. PRACTICE DEFINITION, MERRIAM-WEBSTER, http://dictionary.reference.com.

TRFRA does not immunize religious conduct from government regulation; it requires the government to tread carefully and lightly when its actions substantially burden religious exercise. *Barr*, 295 S.W.3d at 289. In *Employment Div. Dept. of Human Res. of Ore. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed.2d 876 (1990), the Supreme Court held that the Free Exercise Clause of the First Amendment does not prohibit governments from burdening religious practices through generally applicable laws. 494 U.S. at 878-79, 110 S. Ct. St 2600, 108 L. Ed.2d st 885-86. However, TRFRA imposes the requirement by statute. *See Barr*, 295 S.W.3d at 300. As the *Barr* court held there is no bright line rule for determining when religious expression has been substantially burdened but requires a case by case, fact specific inquiry. *Id.* at 301. A restriction need not be completely prohibitive to be substantial; it is enough that alternatives for the religious exercise are severely restricted. *Id.* at 305. The government's interest is compelling when the balance weighs in its favor — that is, when the government's interest justifies the substantial burden on religious exercise. Because religious exercise is a fundamental right, that justification can be found only in "interests of the highest order." *Id*. (citing *Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S. Ct. 1526, 32 L. Ed.2d 15 (1972)). Courts therefore are directed to strike sensible balances, pursuant to the compelling interest test which requires the Government to address the particular practice at issue. *See generally Gonzales v. O'Centro Espirta Beneficente Uniao do Vegetal*, 546

U.S. 419, 126 S. Ct. 1211, 163 L. Ed.2d 1017 (2006).

Although TRFRA places the burden of proving a substantial burden on Plaintiffs, it places the burden of proving a compelling state interest on the governmental entity. *Barr*, 295 S.W.3d at 307. The Court is directed to assess the burden to the person which necessitates taking into account the individual circumstances. PISD argues that Plaintiffs have not met their burden to show that their expression was substantially burdened. However, PISD focuses on the written policies. Plaintiffs also complain about the practices of PISD, and this is not addressed.

The Court finds that PISD has not met its burden of showing a compelling interest in the manner in which it prevented the three children from exercising their rights to religious expression. Since there is no complaint with the 2005 policy as applied under TRFRA, summary judgement should be GRANTED to PISD on the 2005 policy, both facially and as applied. The Court finds that, as to TRFRA, the policy is facially constitutional but a fact issue remains as to the as-applied standard under the 2004 policy as to the three students noted above and summary judgment should be DENIED.

### Recommendation

Therefore, PISD's Motion for Partial Summary Judgment on Plaintiffs' Texas Constitutional Claims and Plaintiffs' TRFRA claims (Dkt. 278) and Supplement to Motion for Partial Summary Judgment on Plaintiffs' Texas Constitution Claims and Plaintiffs' TRFRA Claims (Dkt. 286) should be GRANTED in part and DENIED in part and Plaintiffs shall take nothing by Plaintiffs' TRFRA claims regarding the 2005 policy, both facially and as applied, Plaintiffs shall take nothing by their

TRFRA claims regarding the facial constitutionality of the 2004 policy, and Plaintiffs shall take nothing by all TRFRA claims raised by the Wade Plaintiffs, but Plaintiffs Morgan, Shell and Versher's TRFRA as-applied claims as to the 2004 policy shall remain at this time. The Court further finds that any claim for injunctive relief is now moot in that the 2005 policies are not at issue and the 2004 policy has been amended.

As to piecing together the larger puzzle here and the many rulings made by the Court since the filing of the case over seven years ago, the Court finds that the following issues should be preserved for a bench trial in this case: (1) whether the 2004 policy, as applied, was unconstitutional under the Federal Constitution; (2) whether PISD violated Morgan's, Versher's and Shell's rights under TRFRA under the 2004 policy as applied; (3) Doug Morgan's claim regarding Swanson's refusal to allow parent to distribute materials on school property (which has not been the subject of any motion in this case); and (4) the attorney fees and or nominal damages available to Plaintiffs on an appropriate showing of constitutional or statutory violations.[2]

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual

---

[2]This listing excludes an issues which may remain after the appeals have been exhausted as to the matters of qualified immunity.

findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 1st day of February, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE